## UNITED STATES v. BATES VALVE BAG CORPORATION et al.
### No. 705.

District Court, D. Delaware.
March 11, 1930.

Russell Hardy and George P. Alt, Special Assts. to Atty. Gen., and Leonard E. Wales, U. S. Dist. Atty., of Wilmington, Del.

Clarence A. Southerland (of Ward & Gray), of Wilmington, Del., and Arthur H. Dean, of New York City, for defendants.

MORRIS, District Judge.

The petition of the United States, filed in January, 1929, against Bates Valve Bag Corporation, chartered under the laws of Delaware, charges the respondent with violation of section 3 of the Clayton Act (15 USCA § 14). It alleges that the respondent manufactures machines for packing cement and like substances in valve bags through a filling tube comprising a part of the machine. The bags have a narrow, valvular opening at one end for the introduction of the filling tube. Upon the withdrawal of the tube after filling the bag, the weight of the material in the bag causes the valvular opening to close and remain closed. The valve or valve bag was originally covered by a patent, but the patent has long since expired. The machines embody various features covered by patents owned by respondent. By reason thereof, the respondent has a monopoly of the manufacture and sale of valve bag filling machines. The machines are disposed of under a contract which states that respondent reserves the title, and that the person acquiring the possession has only a license to have and use the machine under specified conditions and only so long as those conditions are observed. The condition here complained of is that the user of the machine shall not manufacture valve bags or buy valve bags from any one other than those specified persons licensed by the respondent to manufacture and sell such bags. The effect of this restriction, it is asserted, has been "to substantially lessen competition" by preventing bag makers not named by the respondent from engaging in the valve bag trade. The petitioner

prayed, among other things, that the contracts between the respondent and the users of the Bates machines be adjudged and decreed to be null and void, in so far as they restrain the user of the machine in the manufacture, purchase, or use of valve bags, and that the respondent be perpetually enjoined from enforcing the challenged conditions in the contracts heretofore made and from making any similar contracts.

By an amended answer filed April 30, 1929, the respondent alleged that on February 28, 1929, it sold all its business and assets of every kind, including its machines and all interests in the contracts with respect thereto to St. Regis Paper Company, a New York corporation; that thereafter the respondent was dissolved, and that it now has no interest in the subject-matter of the petition.

Thereafter the petitioner by supplemental petition set out the transfer of all the capital stock and the assets of respondent to St. Regis Paper Company, the organization by that company of Bates Valve Bag Corporation under the laws of New Jersey, the transfer by the St. Regis Company to the New Jersey corporation, for all the latter's capital stock, of all the assets that had been acquired by the St. Regis Company from the Delaware corporation, and the continued enforcement by the New Jersey corporation, acting under the direction of the St. Regis Company, of the contracts and clauses complained of in the petition. The supplemental petition prayed that, pursuant to section 15 of the Clayton Act (15 USCA § 25), the St. Regis Company and the New Jersey corporation be made additional parties respondent, and that the same relief be granted against them as was sought against the original respondent, the Delaware corporation.

The subpœna prayed for was issued. The new respondents were foreign corporations having no office, agent, or place of business in this district. Consequently, pursuant to the authority of section 15 of the Clayton Act, the subpœna was served outside this district. Thereupon the two new respondents appeared specially and moved to quash the service on them on the ground that by reason of the termination of all interest of the Delaware corporation in the subject-matter of the suit, and by reason of the dissolution of that corporation, the cause with respect to it had become moot, and that, as a consequence thereof, this court had lost jurisdiction of the cause, and hence had lost all power to obtain jurisdiction under section 15

of the Clayton Act or otherwise of the new respondents by service made outside this district.

As the motion to quash the service raised the same issues as the separate defense set up in the answer of the Delaware corporation, it was ordered that the separate defense be heard before the trial of the principal case and at the same time as the motion to quash. That hearing has been had. Thereat it was established that the St. Regis Company had acquired all the capital stock and all the assets of the Delaware corporation in February of 1929, had caused the New Jersey corporation to be chartered and had thereupon transferred to the New Jersey corporation, for all its capital stock, the assets that had been acquired from the Delaware corporation; that the Delaware corporation had thereupon been duly dissolved; that the St. Regis Company now owns all the capital stock of the New Jersey corporation; and that the latter company is continuing to enforce the challenged clauses of the contract made by the Delaware corporation. The basic question now before the court, upon which all the other questions turn, is whether, by reason of these facts, the case against the Delaware corporation has become moot.

The effect of the dissolution of a Delaware corporation is set out in section 40 of the Delaware Corporation Law, as amended, 34 Del. Laws, p. 283, c. 112, § 9, which provides: "All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which said corporation shall have been established ⁂ ⁂ ⁂"

By virtue of this section, the Delaware corporation, for the purpose of this case, is as much alive and in being as it was prior to its dissolution, but its continued existence is "not for the purpose of continuing the business" for which that corporation was established. Consequently, it is clear that the Delaware corporation has, by its dissolution and the assignment of all its assets, deprived itself of all power and opportunity to do any act in pursuance of, or for the purpose of, carrying out or executing the challenged contracts heretofore made by it, or to make any

new contracts of a similar character, and that the grounds for granting the injunction originally sought against the Delaware corporation have been removed. But that fact or conclusion is not sufficient to warrant the further finding that the suit against it has become moot, that the court has been deprived of jurisdiction or should not retain jurisdiction to the end of the suit. For in a suit in which the pleadings disclose a proper case for injunctive relief when the suit was instituted and a prayer for an injunction and incidental relief, the removal during the pendency of the suit of the grounds for injunctive relief does not take away the jurisdiction or bar the court from granting the incidental relief, if upon final hearing the allegations are sustained by proof. This principle is frequently applied in patent infringement suits in equity in which the right to injunctive relief set up in the bill of complaint, upon which right the equity jurisdiction rests, Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975, is destroyed during the pendency of the suit by the expiration, by its own limitations, of the patent sued upon. Clark v. Wooster, 119 U. S. 322, 325, 7 S. Ct. 217, 30 L. Ed. 392. The principle is particularly applicable in suits instituted in the public interest in which incidental relief in addition to that which gives the court jurisdiction is sought and the respondent destroys by his own act, during the pendency of the suit, the grounds upon which the right to the jurisdictional relief rests. In United States v. Trans-Missouri Freight Association, 166 U. S. 290, 307–310, 17 S. Ct. 540, 546, 41 L. Ed. 1007, the freight association was alleged to be in violation of the Sherman Act. The relief sought was a decree that the agreement was invalid and an injunction. After the entry of the decree in the court below, the association was dissolved by vote of its members. In holding that the suit had not become moot, and that the appellate jurisdiction of the Supreme Court had not been ousted by the dissolution of the Association, that court said: "Private parties may settle their controversies at any time, and rights which a plaintiff may have had at the time of the commencement of the action may terminate before judgment is obtained or while the case is on appeal, and in any such case the court, being informed of the facts, will proceed no further in the action. Here, however, there has been no extinguishment of the rights (whatever they are) of the public, the enforcement of which the government has endeavored to procure by a judgment of a court under the provisions of the act of congress

above cited. The defendants cannot foreclose those rights, nor prevent the assertion thereof by the government as a substantial trustee for the public under the act of Congress, by any such action as has been taken in this case. By designating the agreement in question as illegal, and the alleged combination as an unlawful one, we simply mean to say that such is the character of the agreement as claimed by the government. That question the government has the right to bring before the court and obtain its judgment thereon. Whether the agreement is of that character is the question herein to be decided."

In the case at bar, I think the dissolution of the Delaware corporation and the transfer of all its assets did not make the suit against it moot or deprive the court of jurisdiction to pass upon the legality of the challenged contracts.

■■ At the argument, it was suggested that the service made upon the New York and the New Jersey respondents should be set aside for the further reason that the Delaware corporation and the new respondents were not joint conspirators or joint violators of the Clayton Act and, if violators of the act at all, they are but successive violators and are, consequently, not within the scope of that portion of section 15 of the Act (15 USCA § 25), which provides for bringing in additional parties "whenever it shall appear to the court * * * that the ends of justice require that other parties should be brought before the court. * * *" This power is as broad as its necessity. But it presents nothing new with respect to the added parties in this suit, for it has long been held that one to whom a defendant in a suit transfers the subject-matter of the suit while the suit is pending may be made a party thereto. Sedgwick v. Cleveland, 7 Paige (N. Y.) 287; Ex parte Mobley, 19 S. C. 337. And the ends of justice require that, if the contracts here challenged are in violation of the Clayton Act, the relief afforded the petitioner should not be limited to a decree adjudging the contracts to be illegal, but should, to be fully adequate, include an injunction enjoining either or both of the new respondents from continuing to enforce the old contracts and from entering into or acting under any similar contract in the future.

The motion to quash the return of service made upon the New York and the New Jersey corporations must be denied, and the suit must proceed to final hearing upon its merits.