## UNITED STATES v. VEHICULAR PARKING, Limited, et al.

### Civ. No. 259.

District Court, D. Delaware.

Dec. 3, 1943.

See, also, 52 F.Supp. 751.

Stewart Lynch, U. S. Atty., of Wilmington, Del., Ernest S. Meyers, Sp. Asst. to the Atty. Gen., and E. Houston Harsha, Jr., Sp. Atty., of Washington, D. C., for the United States.

Hugh M. Morris and Edwin D. Steel, Jr. (of Morris, Steel & Nichols), both of Wilmington, Del., for defendant Dual Parking Meter Co.

LEAHY, District Judge.

The defendant Dual Parking Meter Company (herein called "Dual"), together with other corporate and individual defendants, has been charged with violating Secs. 1, 2, and 3 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2, and 3.[1] The complaint seeks, among other things, to prevent continued violations of the statute. Defendant's answer sets out that, by reason of an order of the War Production Board,[2] it has completely stopped the manufacture and production of parking meters because of restrictions placed upon essential materials. After filing its answer and amended answer, defendant participated in several pretrial conferences, attended the hearings, and, after the government introduced its evidence and was about to rest its case, defendant filed a motion for summary judgment, upon the supporting affidavit of one Carl C. Magee (a defendant but not a moving party), pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that the issues as to it have become moot; and that the court is required, as a matter of law, to dismiss the pending action, without prejudice, as to Dual. Defendant's main reliance is on United States v. Hamburg-Amerikanische etc., 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387. In that case the government charged a number of steamship companies with violations of the Sherman Anti-trust Act. The district court found violation on the part of some

---

[1] Other phases of this case may be found in an opinion filed this day. See 52 F. Supp. 751.

[2] The order of WPB relied on by defendant is apparently General Conservation Order M–126, issued May 5, 1942, 7 F.R. 3364, as amended on September 14, 1943, S.F.R. 11130. By statute the federal courts are required to take judicial notice of the contents of the Federal Register, 44 U.S.C.A. § 307.

defendants and entered an injunction against further practices, but dismissed the complaint as to other defendants. The Supreme Court held that the intervention of World War I had made moot the questions involved in the litigation, and it would not, therefore, adjudicate abstract propositions. Consequently, the court dismissed the action, without prejudice to the government to institute another action at a later day if the unlawful practices were resumed.

Defendant's supporting affidavit states that the only business it is carrying on presently is: (1) "To dispose of a small residue of meters and parts"; (2) "The collection of debts due it"; and (3) "The sale of parts to cities as required to keep the meters in operation in so far as said parts were on hand; that many of these parts have long been exhausted and that no parts have been manufactured since the 31st day of May, 1942." Except as stated, defendant asserts its business "has been at a standstill" and "it will be impossible for said company to manufacture or sell parking meters until the war restrictions have been removed by the War Production Board." Moreover, defendant asserts it is not acquiring further patents, licensing under patents, buying or selling secondhand meters, supplying service, or paying royalties.

The government contends that the case against defendant has not become moot. It shows that what it charges as the unlawful contract between Dual and Vehicular has not been cancelled; neither has Dual abandoned its relationships with the other defendants. There is no showing, it is said, which indicates that defendant has dismantled its plants and abandoned the manufacture of parking meters permanently or that it is not planning to use substitute materials which do not come within the ban of the WPB order or that it is not acquiring inventions relating to the manufacture of parking meters and patents and patent applications relating to such inventions. In addition, the government presses the argument that the principal practices complained of exist now, i. e., that all defendants still have a monopoly of patents in the industry and, as a monopoly of patents is unlawful (United States v. Hartford Empire Co. et al., D.C., 46 F.Supp. 541), the question at bar is far from moot, especially in view of the fact that cessation of manufacture of parking meters alone is not the principal object of this litigation. The primary relief which the government seeks is to enjoin defendants from instituting and threatening to institute patent litigation and a decree directing defendants to grant unrestricted and royalty-free licenses under their patents.

PX. Nos. 143, 144 and 145 disclose that seven of the patents in suit were transferred by defendant to another defendant, Vehicular Parking, Ltd. One exclusive license under three other patents and one patent application were conveyed by defendant to Vehicular. None of the patents assigned or licensed has expired. As stated before, one of the government's prayers, is that all defendants be enjoined from collecting or requiring payment of any royalties and from instituting or threatening to institute suit to enforce any rights under the patents with respect to which the conspiracy, detailed in the complaint, was effectuated; and that the court ultimately decree that the defendants be required to grant royalty-free licenses under the patents to all applications. In order to bring the many issues of this case into focus, I called several pre-trial conferences, at which time I requested the parties to file pre-trial briefs. In one of such briefs, Dual took a position that if the court should ultimately find a violation of the statute, reasonable measures should be taken by the court, other than compelling forfeiture of the patents, to prevent a revival of the objectionable activities. If a finding were ultimately to be made that defendants have violated the statute, any discussion of the relief to be granted is obviously premature at this moment. That relief may assume one of many different patterns. For example, Vehicular may be ordered dissolved with a mandate that the patents revest in the several defendants which assigned them to Vehicular. As defendant here stated in its pre-trial brief: " * * * it would seem that the Court should exercise the utmost care in any decree rendered by it against Vehicular to protect the patents of Dual, as an unpaid seller of a large number of patents which Vehicular now holds."

■ It is clear to me that Dual's motion for summary judgment must under these circumstances be denied. To secure the relief which the government seeks, Dual must be retained as a party defendant, simply as a cautionary technique. Of course, it must be understood that this view

does not contain and should not contain even by implication that the court is disposed, at this time, either to grant in whole or in part or not at all the prayers of the complaint. My present ruling is predicated on the proposition that unless Dual is retained as a party defendant, it would have no standing to discuss later the form of the ultimate decree. It is important that Dual be retained as a party defendant for the further reason that the relief to be granted cannot be determined at this moment, non constat, that the relief granted will not run against Dual. True, the motion for summary judgment could be granted and Dual nevertheless be retained as a party defendant to satisfy the mentioned contingencies. But the mere fact that Dual asks to be protected as the unpaid seller of a large number of patents which Vehicular now holds indicates that it is not entitled to summary judgment.

I reach this view in the light of the fact that nowhere in its complaint does the government make any prayer relating to the manufacture as such of parking meters. The public interest to be served if the government ever proves its case relates to the alleged conspiracy with respect to the patents rather than with the actual manufacture of the meters. WPB's order, temporarily preventing manufacture, cannot erase that interest if it later be determined that royalty-free licenses should be granted to all applicants as a form of punishment for defendants' mis-use of the patents in suit. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; United States v. Bates Valve Bag Corp., D.C.Del., 39 F.2d 162. Moreover, the Hamburg-Amerikanische case, supra, upon which defendant relies, is distinguishable. There the continuation of the combination was not only impossible due to World War I, but it also had become unlawful insofar as the combination was directed to dealing with enemy aliens. The WPB order does not make unlawful the continuation of the alleged conspiracy as the patents per se are beyond the reach of that order. In fact, the order may be relaxed at any time, even before this particular litigation terminates. And, as suggested by the government, inventive genius may bring to light in the near future noncritical materials which may be substituted in the manufacture of defendant's meters.

For the foregoing reasons the motion of defendant Dual for summary judgment is denied.