DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF NEW MEXICO.

### JULY TERM, 1859.

---

## FRANCISCO LEONARDO v. TERRITORY OF NEW MEXICO.

FOREMAN'S NAME NOT INDORSED ON INDICTMENT, OBJECTION WAIVED, WHEN.—Where a defendant in a criminal case goes to trial in the court below without objecting to the want of an indorsement of the foreman's name on the indictment, he is precluded from making that objection in the appellate court, and it will be presumed that the indictment was properly indorsed.

INDORSEMENT OF FOREMAN'S NAME INDISPENSABLE.—The indorsement of the foreman's name on an indictment is an indispensable act. *Per* Benedict, C. J.

CAPTION OF INDICTMENT, SUFFICIENCY OF.—Where the caption of an indictment states that the grand jury "were impaneled, sworn, and charged to inquire within and for the body of" a particular county, it is sufficient to show that they were legally selected from that county, without a distinct averment of that fact.

RECEIVING STOLEN GOODS—PREVIOUS CONVICTION OF THIEF UNNECESSARY.—A receiver of stolen goods may be tried and convicted without a previous arrest, trial, and conviction of the thief.

IMMATERIAL OR TECHNICAL EXCEPTIONS.—After a trial on the merits, the judgment in a criminal case will not be reversed on immaterial or technical exceptions.

RECEIVING STOLEN GOODS, WHAT CONSTITUTES.—One who, knowing or having good reason to believe that goods are stolen, retains them for a single moment, or permits their concealment in his house, either for the purpose of appropriating them to his own use or for the purpose of obtaining the reward, may be convicted of receiving stolen goods.

VERBAL INSTRUCTIONS TO JURY.—Under the act of the legislature of January, 1853, the judge's instructions, in criminal as well as civil actions, should be in writing, but where verbal instructions are given in a criminal case, the judgment will not be reversed on that ground, unless the instructions are excepted to at the time and embodied in the bill of exceptions, and are substantially erroneous and prejudicial to the defendant.

"SUIT," MEANING OF, IN ACT OF 1853.—The word "suit" in the act of January, 1853, requiring instructions to be in writing, applies only to civil causes. *Per* Boone, J., dissenting. Benedict, C. J., and the other judges, *contra*.

INSTRUCTIONS GIVEN WITHOUT REQUEST.—It is the right of the judge presiding at a criminal trial to instruct the jury without being requested to do so by the parties. *Per* Benedict, C. J.

APPEAL from the district court for Bernalillo county. The case is stated in the opinion of Boone, J.

*Baird and Hopkins*, for the appellant.

*H. N. Smith, attorney-general*, for the appellee. 1. The statute requiring written instructions in all "suits" applies only to civil causes: Toml. L. Dict. 535. 2. The caption of the indictment is sufficient: Whart. Prec. of Indictments, 14 and 20; *Tenorio* v. *Territory, ante*, 279.

By Court, BOONE, J.:

The defendant, Francisco Leonardo, was committed at the last term of the April court for Bernalillo county, upon an indictment for receiving stolen goods, the property, goods, and chattels of one Louis Zeckendoffer. The jury assessed a fine of one dollar, upon which judgment was entered by the court below in the usual form. Upon the record herein as presented, it appears that the clerk below has omitted to certify the judgment rendered; but, by the argument of the attorney-general and the counsel for the defendant, the court is permitted to regard the judgment as entered below in the usual form.

Several exceptions were taken in the court below, and errors assigned in this court, which are in substance as fellows, to wit: That the indictment is defective; that the caption does not state that the jury were taken from the proper county, and that it is not shown that the person who is alleged to have stolen the money was first arrested, tried, and convicted; that the court erred in refusing a new

trial, and that the court erred in charging the jury verbally, without being requested to do so. The indictment in this case is in the usual form, as laid down in the books of approved precedents; it is full and explicit as to the offense charged, and every material allegation is substantially set forth. It was stated in the argument, but nowhere appears in the exceptions or errors filed, that the name of the foreman was not indorsed upon the indictment, as to the finding by the grand jury. The defendant should have taken notice of this in the court below. He did not do so, but chose to go to trial, and he is now precluded from obtaining any advantage of this defect, if any in fact existed; and it is fair to presume that all was regular in the court below; that the name of the foreman is regularly indorsed upon the indictment; but that it is a clerical error of the clerk in omitting to copy it in the record. Of this I have no doubt whatever. The caption of the indictment is defective, it is alleged, because it does not state in express terms that the grand jury were taken from the county of Bernalillo. Upon this point the court has no doubt. The caption states that " the grand jury for the territory of New Mexico were impaneled, sworn, and charged to inquire within and for the body of the county of Bernalillo;" and it is an extremely forced presumption, to suppose that a grand jury thus designated were taken from a neighboring county, instead of the county where the trial took place and in which the offense was committed. It is therefore sufficiently apparent that they were properly and legally selected.

As to the exception, that the person stealing the money should have first been arrested, tried, and convicted, it is only necessary to say that the act of assembly in express terms, has declared this to be unnecessary, and such, I believe, is not the law in any state in the union. After a trial upon the merits, this court will not reverse upon immaterial or technical exceptions. This, I believe, has been the ruling of every appellate court in England as well as in this country for the last three hundred years, and yet courts are still urged to pass upon exceptions of that character, and this although it must be apparent that they are certain

to share the same fate of the thousand and one similar cases already decided upon.

To seriously regard trivial and unestablished exceptions to indictments and proceedings in criminal cases, would, in a majority of cases, entirely defeat the ends of justice, make trial by jury a mockery, and courts of justice a curse instead of a benefit to the country. There are well-settled and substantial objections that may exist and be alleged against an indictment which no trial by a jury, however fair, can cure. In cases of this character it is the duty of the court to arrest the judgment. For it is the right of every defendant arraigned upon a criminal indictment to demand that the matters charged against him should be set forth in such a manner as to afford him protection, as a bar to any subsequent prosecution for the same offense, and unless our courts disregard every or all established principles of law and common sense, no other exceptions should be entertained.

The motion for a new trial was overruled by the court below, and this court is unanimously of the opinion, from the facts exhibited upon the record, that the ruling was correct. All of the money, amounting to two thousand five hundred dollars, was found concealed in the house of the defendant, with the exception of some fifty dollars paid to him by the person who stole it, in the purchase of a horse and some provisions; and when the fact of the larceny was mentioned to him, on the morning after the occurrence, he admitted that he knew where the money was, and stated that he would disclose the fact to the owner, for the sake of the reward of two hundred dollars, which was offered for its recovery. This was sufficient to satisfy the jury that he knew where the money was, and the fact of his having received a portion of it from the thief, in the purchase of a horse and provisions, was calculated to leave no doubt upon their minds of his knowledge as to who the thief was. And if the defendant, for a single moment, retained this money, or any portion of it, or permitted it to be concealed in his house, either for the purpose of appropriating the same to his own use, or for the purpose of obtaining the reward, he is guilty of the charge. The smallness of the fine imposed, or assessed, by

the jury, was no doubt the result of a conviction on their part that howsoever he might be guilty in the eye of the law, yet having shown a disposition to return the money, which was done to the entire amount, a mere nominal punishment was all that was required, and whether the jury erred in this view of the case or not, it is certainly no good ground for the defendant to take exceptions to. He at least should not complain of this.

There is another exception taken in this case to the action of the court below, which I will now proceed to notice. It is that the court erred in giving verbal instructions to the jury. A majority of the court are of the opinion that the act of assembly upon this subject extended to criminal prosecutions as well as civil cases. My opinion is unchanged upon this point, and I am constrained to differ with the majority of the court. There was no fault found with the court below, by the counsel for the defendant, with anything that was said to the jury by the court, and the remarks made to them were very few. No exception was made as to an instruction either upon the law or the facts in the case, and no request made to the court to reduce the instructions given to writing. But the objection rests upon the naked fact of an act of assembly, which, it is contended, prohibits the judge in all cases from delivering a verbal charge to the jury. There are, I am aware, in many states of this union, statutes which require the judge in all cases, when requested by counsel, to furnish a copy of his charge to the jury. This is probably right and proper, and although some of the judges look upon it as a privilege liable to be abused by counsel, in sometimes requiring written opinions when really no possible objections in any way can be made to the charge; yet such is the high character and courteous deportment of a vast majority of the members of the bar in the United States, in their bearing towards the court, that it seldom occurs that a judge is asked to commit his charge to writing, unless the counsel is sincere in the belief that he has erred in his view of the law, or has misstated the facts in the case; any other course would be regarded as captious. The judge is presumed, at least, to occupy an impartial position on the bench, and he should be actuated

solely by a desire to see that the law should prevail, and the ends of justice be attained, and if to effect these results, he should be of opinion that the jury required instructions or an elucidation of the evidence, it is his duty to give it to them. The act of assembly in question is in these words: "That in any suit in the district court, the judges shall give their instructions to the jury in writing only, and such instructions thus given shall be filed with the papers in the case."

I shall not undertake here to enter upon the question, as to how far it is in the power of a territorial legislature to regulate the action of United States judges, as to the manner and mode of administering justice in the trial of causes, or whether it has the power to say that every word uttered by a judge to a jury, in all civil suits and criminal prosecutions shall be in writing. Would it not, by a parity of reasoning, have the power to say the judges should not give any instructions whatever? However this may be, I feel it to be a matter of duty and self-respect, not to give a latitudinous construction to an act of the legislature, calculated, in my opinion, to impose unnecessary burdens upon the bench.

In endeavoring to ascertain what is the true Anglo-Saxon meaning which the legislature attached to the word suit, I do not deem it necessary to refer to Blackstone, Coke, or the Year Book, or to the old Latin lexicographers, or to the early writers upon civil law, for I very much question whether these books were read or studied by the legislature that passed the law, with any view of finding out the true meaning and definition of the word suit. It is plain and obvious that this word, in common parlance, means the mode and manner adopted by law to redress civil injuries; in other words, that it means civil action. That this is the common and universal acceptation of the meaning of the word suit, can not be denied. The words criminal suit sound awkwardly, at least to the professional ear, and are seldom or never used. Had it been the intention of the legislature, or the gentleman who framed the law, to include trials for crimes and misdemeanors, the words "and criminal prosecutions" would unquestionably have been added.

The universal rule for construing statutes is to presume that the legislature attached the usual and customary meaning to the words employed in connection with the subject-matter under consideration. And this is certainly the only fair and honest mode of arriving at their intention. A departure from this common-sense rule must invariably lead the inquirer into a thousand devious paths. It is certainly the only safe rule for a judge to pursue, and should never be deviated from. No other construction, therefore, can, in my opinion, be fairly put upon the act in question, than that the legislature intended to impose the duty on the judge, of writing out his opinion in civil cases only.

For myself, I care nothing about the matter, and shall, of course, in the trial of civil suits and criminal prosecutions conform to the views of the majority of the court; my only objection is to the principle involved.

The court are unanimous, however, that the judgment of the court below can not be reversed upon this ground, for it does not appear that there was any misstatement of law or fact to the jury.

The judgment, therefore, of the court below is affirmed with costs.

Separate opinion of BENEDICT, C. J. :

Although I concur in the judgment which the court renders in this case, I am not content to let it rest without putting upon record my opinion as to one or two points which have been presented. The transcript shows that the defendant moved in arrest of judgment, assigning as one ground, that the court charged " and directed the jury, as to the law and fact, without being requested or desired to do so; and that said charge and direction was given verbally, without requirement, against the provisions of the statute, thereby illegally influencing the jury." Defendant excepted to the court's overruling the motion. As to the exception that the court charged and directed the jury without being requested or desired, I can hardly think that the distinguished counsel for the defense could have been very serious in the insertion of that portion in the motion or bill. The power and right of a judge to give a charge to the trial jury

after hearing the evidence, when he shall think proper and shall believe that 'right and justice in the case demand such act to be done by him, does not depend upon the wishes or will of the parties or their counsel; it is among the functions and duties of the judge. He is not required to be passive and silent, until moved to the exercise of this important function by the counsel, nor can he be resisted in its performance, although the matter, the principle, and law of the charge may be excepted to and preserved for revision in the appellate court. He should scrupulously avoid encroaching upon the rights of the jury, whether in civil or criminal causes, but within his sphere of duty and authority. He should see in-trials before him that crimes do not go unpunished, and that the innocent do not fall under conviction; that justice be not thwarted or trampled under foot; that passions and prejudices do not usurp the office of calm minds and impartial judgment; and that sophistries and ignorance do not dominate over reason, logic, and the laws.

In instructing the jury below without being required, the judge but exerted his right to do so, and all exceptions as to the kind of chair he occupied, or where his hat was hung, or where he boarded and lodged, would have possessed equal legal merit and effect. Not so with the other portion of the exceptions mentioned in the case; this was the instructing verbally. In January, 1853 (see Revised Statutes), the legislature enacted, as appears in the English translation, as follows: "That in any suit in the district court the judge shall give his instructions to the jury in writing only, and such instructions so given shall be filed with the papers in the case."

I am not aware that any judge in this territory has ever held that this provision was binding upon him in the trial of causes arising under the laws of the United States. In such cases our courts look for their rules of proceeding and practice to a source superior in authority to our general assembly. In cases arising, however, out of the legislative acts of this territory, and in trials in that branch of jurisdiction, the courts have conformed in their rules of procedure to those prescribed by the legislature where the subject was one of rightful legislation in its hands.

In the act cited, the word suit being employed in the English publication, the court below seems to have held, and the judge of that court holds still, that civil suits only are included, and criminal causes are excluded. Now to a rightful interpretation of the act, it must be taken into consideration that the translation is from the original in Spanish. It is so marked in the statutes. It was introduced, passed, and approved by the governor in Spanish; then, if there be any discrepancy between the plain and unquestioned meaning of the terms used in the Spanish original and the terms used to express the same meaning in the English translation, the original must prevail. In the interpretation of the law the Mexican people are not to lose the benefit of their laws enacted in their own tongue, because the translation has done injustice, or because those who occupy judicial seats may not be versed in the Spanish idiom. Now, the word used in the original act in Spanish, and which is translated suit, is *causas;* this is plural of the noun *causa.* The *causa,* according to high Spanish authorities in lexicography, when used in relation to judicial proceedings, means lawsuits, trials, criminal causes or information: See Velazquez' Dictionary.

By reference to the Spanish and Mexican law-writers, we find that the word *causas* is used to embrace all causes, as well criminal as civil. The terms suit and lawsuit, we find, when translated into Spanish, to be, in connection with judicial matters, *pleito,* and this word is defined litigation, judicial contest, lawsuit. Cause in English includes those civil and criminal, so the word *causas* in Spanish expresses civil and criminal causes.

From this exposition, there can be no doubt that the act, as written, passed, and approved in the Spanish original, and as it now stands upon the statute books, does require the judges to give their instructions to juries in all cases, civil and criminal, in writing. New Mexico is not strange and alone in this kind of legislation. Many states have enactments on the same subject, and not infrequently more stringent in limiting their judges' action in the mode of instructing juries. Our act only requires the instructions, be they what they may, to be written, and to be preserved with

the files of the cause. The judge may instruct to whatever
extent he may believe the case demands, but he must write
what he says. In the motive that induced the law in ques-
tion, I can see no good reason that it should be limited to
civil causes only. It was intended to temper the influence
of the judges with the juries. Perhaps the law-makers
were under the impression, justly obtained, or from mis-
representation or caprice, that some of the judges had
misused or abused the power of instructing, by making the
"last speech" to the jury. Perhaps some judge, from a
warm zeal to promote justice and prevent wrong, had con-
tracted a habit of endeavoring to enforce, by his delivery
and manner, his views, opinions, and feelings upon juries
to such an extent as to produce discontent among parties in
court. It may have been, too, that ambitious and talented
counsel, in all the warmth of advocacy for their clients, had
felt chafed and chagrined in meeting instructions pointed
and amplified in direct hostility to the counsel's great ob-
ject and hope—success. Let the complaint have been what
it may, any motive apparent existed as strong with refer-
ence to criminal causes as civil causes. Lawyers, from
their education and practice, would incline to look for the
stronger motive growing out of criminal causes. If the
judge abuses his functions, and, from his influence with
juries, becomes dangerous to the rights of parties on trial,
can it be supposed that the legislature would only check
and temper his action in cases involving dollars and prop-
erty only, and leave him loose to act out his will, ample and
swift, in cases which involve the liberty and life of the party
upon trial? Such a discrimination, I presume, is unknown
upon the statute books throughout the union, and I cer-
tainly shall not impute to our assembly the discredit of hav-
ing adopted it, until the rules of legal construction shall
impose upon me the obligation to determine that such
adoption has been made.

To be prepared to instruct at all times in writing, and not
to err as to the law or the examination of facts, is a severe
task upon intellect and knowledge. To escape error and
never mistake the law can hardly be expected of the ablest
and wisest. No judge should, however, so dispose of the

rights of men from the bench as to shrink from furnishing for review the clearest evidence of his acts or their legal grounds. The additional labor in concentrating the powers of the mind and condensing principles into writing has some compensation in the avoidance of disputes and misrecollections at the bar as to what has really been instructed when exceptions are taken. In this the dignity of the bench is less annoyed and exact certainty attained. The higher the position and more enlarged the service imposed upon a man in a free government, the more intense is the mental labor to equal the duties and requirements of the office. The judges of the higher courts hold in their hands the administration of the laws to their fellow-beings. On these depend the happiness and security, even the very existence, of society. Labor and anxiety, with an oppressive feeling of responsibility, are unavoidable to an enlightened and conscientious judge. The office is not created for the gratification of his pleasures, vanity, or pride. He is in a high trust position, for and in behalf of the government, the the public, and individuals. This ease and quiet must constitute no part of the rule of his conduct, nor must he shrink from any burden or labor as hard and unbearable, when required by the legislative powers, with an intentional want to arrive at greater directness, exactness, and justice and right in guarding and enforcing the natural and legal rights of men. The continuance in an office and receiving its honors and emoluments should all be received as evidence of a willingness on the part of the incumbent to discharge all the duties, bear all the burdens, and perform all the labor pertaining to the office.

As to the instructing verbally in this case, I am clearly of opinion that it was improper on the part of the court and in direct violation of the statute. Yet that complaint can avail the convicted defendant nothing. In the hearing he has obtained in this court, he should have embodied the charge itself and been able to have submitted it to the inspection of this court. This court will not reverse any cause for alleged irregularities in the manner of charging the jury, unless the charge itself shall be preserved and the

record shall show that it was excepted to when delivered. This court must be able to see that the instructions were such as might lead to influence unfavorably the party complaining. Nothing will be regarded as instructions required to be written except those given upon the law and evidence touching the merits of the case and the issues submitted to the jury. Trivial exceptions upon immaterial matters will work no relief to the objector, and especially when the whole record shall show that upon full trial substantial justice has been done between the parties. The indorsement of the name of the foreman of the grand jury upon the indictment is an indispensable act. I would not for a moment be understood as tolerating the idea that the court could arraign the accused and compel him to plead to and go to trial upon an indictment without such indorsement. No notice was taken of such omission in this case below. Surely no counsel, in the fulfillment of his professional duties, would submit his client to all the expenses, perils, and mortifications of a trial for felony, knowing such a fatal deficiency to exist in the form of proceedings, and in giving faith and authority to the public charge of crime. It certainly can not be supposed that the omission could have escaped the counsel's examination.

All reasonable presumptions in this court are now in favor of the proceedings having been regular, and the conviction rightfully had in the court below. Particularly is this the case when the charge does not involve life or a total destruction or forfeiture of the liberty of the accused. In this case it is fair to presume that the indorsement existed in the court below, and that clerical laches have failed to send the fact with the transcript. The clerk does certify that the "indictment" was found by the grand jury. A glance at the transcript will at once evince the irregular and inexperienced manner in which it is prepared. The defendant brought this case for review. It was upon him to have a perfect record before us. The party presumes too much upon the want of caution and firmness of this tribunal, so far as its history has as yet been unrolled, when he brings his case here, and with a mutilated record, caused

by evident clerical errors, hopes to escape upon an untenable technical objection the just denunciations of the law which have overtaken him in the district court.

The attorney-general for the territory might well have gone to a hearing upon the transcript, with an intelligent foresight that though the defendant had filed an evidently diminished record, the court would properly regard and enforce the legal presumptions inherent in the cause.

BLACKWOOD, J., concurred with his honor the chief justice.