## COMMONWEALTH *vs.* JAMES F. MOORE.

Bristol.   Oct. 26. — Dec. 2, 1886.   DEVENS & W. ALLEN, JJ., absent.

A member of a voluntary association, formed for the enforcement in a certain city of the laws against the illegal sale of intoxicating liquors, and for the prosecution of violations of those laws, is incompetent to sit as a juror on the trial of a complaint for such a violation, instituted by an agent of the association, who is furnished by it with money to pay his expenses in carrying on the work, and is also paid for his services.

COMPLAINT for keeping and maintaining a common nuisance, to wit, a certain tenement in New Bedford, used for the illegal sale and illegal keeping of intoxicating liquors, on April 1, 1886, and on divers other days and times between that day and May 22, 1886. In the Superior Court, before the jury were empanelled, the defendant objected to Abram T. Eddy, one of the jurors, as incompetent to sit in the case. *Staples*, J., overruled the objection. The jury returned a verdict of guilty; and the defendant alleged exceptions. The facts appear in the opinion.

*E. L. Barney*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

GARDNER, J.  Jurors in this Commonwealth are required to be "persons of good moral character, of sound judgment, and free from all legal exceptions." Pub. Sts. c. 170, § 6. By § 35, upon motion of either party in a suit, the court is required to examine the person called as a juror therein, "to know whether he is related to either party, or has any interest in the cause, or has expressed or formed an opinion, or is sensible of any bias or prejudice therein." After the examination of the juror, as above

provided, the party objecting may introduce any other competent evidence in support of the objection, subject to the discretion of the court. *Commonwealth* v. *Thrasher*, 11 Gray, 55. *Commonwealth* v. *Gee*, 6 Cush. 174. If it appears to the court that the juror does not stand indifferent in the cause, he shall stand aside, and another be called in his stead. All this must be done before the jury are empanelled. *Woodward* v. *Dean*, 113 Mass. 297. The word "suit" has, in practice, been considered as meaning criminal prosecutions, as well as civil proceedings. *Commonwealth* v. *Abbott*, 13 Met. 120. *Commonwealth* v. *Gee*, and *Commonwealth* v. *Thrasher*, *ubi supra*. *Commonwealth* v. *O'Neil*, 6 Gray, 343. *Commonwealth* v. *Eagan*, 4 Gray, 18, 20.

But few cases have arisen under this statute, to which the attention of the court has been called. In *Commonwealth* v. *O'Neil*, *ubi supra*, which is strongly relied upon by the government in support of the ruling of the Superior Court, three of the jurors were members of "Carson Leagues." The object of the members of such leagues was the prosecution of violations of the laws against the manufacture and sale of intoxicating liquor. They subscribed each a certain sum to the funds of the association for the purpose of defraying the expenses of such prosecutions; and each member was liable to be assessed his proportion of all expenses incurred in such prosecutions, and was liable to pay the same to the extent of his subscription. The court held that, as the exceptions were framed, they could not find enough to show that the judge who presided at the trial was legally bound to set the jurors aside; and that it did not appear "that either of them had any, even the smallest, pecuniary interest in the event of the prosecution." The question whether they stood otherwise indifferent in the result of the trial does not appear to have been raised.

In *Commonwealth* v. *Eagan*, *ubi supra*, one of the jurors, upon inquiry, stated that he was a member of the Carson League, the object of which society was to prosecute individuals for violation of the liquor law; that assessments were made upon the members for the purpose of carrying out the object of the society; that his membership consisted in subscribing for stock; and that he had paid one assessment, and expected to pay more. The juror further said, that the amount of his assessment would not

be changed or affected by the result of this indictment; and that there was nothing in the existence of his membership to prevent his giving a fair and impartial verdict, according to the evidence. The juror was permitted to remain upon the panel. This court held, on the defendant's exceptions, that the court had no knowledge of the assumed obligations of the members of the Carson League, other than what the juror stated to be his understanding of them; and that it was not prepared to decide that, in this instance, the ruling of the Court of Common Pleas was wrong. Mr. Justice Metcalf, in giving the opinion of the court, said: " We deem it to be our duty, however, to say that, in our judgment, the members of any association of men, combining for the purpose of enforcing or withstanding the execution of a particular law, and binding themselves to contribute money for such purpose, cannot be held to be indifferent, and therefore ought not to be permitted to sit as jurors, in the trial of a cause in which the question is, whether the defendant shall be found guilty of violating that law."

One of these cases makes the fact of pecuniary interest in the juror a prominent feature in determining whether he is indifferent, or unfit to sit upon the trial. But this is not the only disqualification to the fitness of a person to sit as a juror. He may be entirely unaffected by the result of the trial, so far as any pecuniary interest is concerned, and yet he may have such ill-will against one of the parties, be so biased or prejudiced against him, that he could not be indifferent. A juror may also stand in such relation to witnesses to be produced at the trial, that he cannot fairly consider their testimony. In a criminal case, he may be the instigator of the prosecution, and be absolutely unfit to act as a juror in determining the guilt or innocence of the person accused.

The facts in the case at bar, as stated in the bill of exceptions, differ materially from those reported in the cases we have referred to. The juror was a member of the Law and Order League of New Bedford, where the offence charged in the complaint is alleged to have been committed. The league was a voluntary association formed for the enforcement in New Bedford of the laws against the illegal sale of intoxicating liquors, and for the prosecution of liquor sellers. The complainant, Jules

Giquel, and one Partridge, both of whom were witnesses at the trial, were agents of the League, and furnished by it with money to pay expenses in carrying on their work, and were also paid for their services. The complainant, with Partridge and three sailors, went to the defendant's bar-room. There was evidence that Giquel paid for some of the liquor ordered, and furnished to them. That the complainant Giquel, and Partridge, were employed by the League to induce the defendant and others to sell liquor for the purpose of prosecuting them for violation of the law, is apparent from the evidence and the instruction given to the jury. The presiding judge instructed the jury, " that persons employed to induce the defendant and others to sell liquor for the purpose of prosecuting them for violation of their licenses should be regarded with great caution and distrust as witnesses. The considerations went to their credit as witnesses, but it was still for the jury to say how much credit should be given them." The juror was a member of a local association, which employed the complainant to induce the defendant to violate the law, in the city of New Bedford, in order that he might prosecute the defendant for such violation, and he was the agent of the juror for this special purpose. He, with his associates, had selected Giquel as a proper person to induce the defendant to violate the law, prosecute him for such violation, and go before a jury as a witness worthy of belief.

It is difficult to see that such a juror was so indifferent, so disinterested and unbiased, that he could regard his agent, whom he had employed through his association, " with great caution and distrust " as a witness. These considerations as to his credit he had already passed upon and determined, when Giquel had been selected as agent of the association of which he was a member.

But it is not necessary to go to the extent that the agent of the association was appointed for the purpose of inducing the defendant and others to violate the law. It is sufficient that it appeared that the complainant Giquel was employed, by the association of which the juror was a member, to enforce the laws in New Bedford against the illegal sale of intoxicating liquor, and to prosecute liquor sellers in that city. He thus became the agent of the juror, as well as of the other members of the association. Whether or not he was to appear as a witness

at the trial is immaterial in the view we take of the case. The complaint which the juror was to try was originated by his agent, appointed for the purpose of making such complaints. He could not be indifferent as to the result of that prosecution. He could not sit unbiased in determining the guilt or innocence of the defendant upon a complaint instituted by the juror's authorized agent.

We are, therefore, of opinion that the juror was not competent to sit, and that the Superior Court erred in allowing him to remain upon the panel.                         *Exceptions sustained.*