# UNITED STATES v. SAFEWAY STORES, Inc. (TEXAS) et al.

## No. 2775.

Circuit Court of Appeals, Tenth Circuit.

Feb. 8, 1944.

Holmes Baldridge, Sp. Asst. to the Atty. Gen. (Wendell Berge, Asst. Atty. Gen., George H. West, U. S. Atty., of Kansas City, Kan., and Kenneth L. Kimble, Horace L. Flurry, and Philip Marcus, Sp. Assts. to the Atty. Gen., on the brief), for appellant.

Louis R. Gates, of Kansas City, Kan. (Mitchell T. Neff, of San Francisco, Cal., and Henry N. Ess, of Kansas City, Mo., on the brief), for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and VAUGHT, District Judge.

VAUGHT, District Judge.

Three corporations were organized under the name Safeway Stores, Inc., one in Texas, one in California, and one in Nevada. Dwight Edwards Company and The Lucerne Cream and Butter Company were corporations organized under the laws of California. Sanitary Grocery Company, Inc., was a corporation organized under the laws of Delaware. All of them were subsidiary corporations of Safeway Stores, Inc., a corporation organized under the laws of Maryland. Each of such subsidiary corporations was duly dissolved pursuant to the laws of the state in which it was organized and created. Thereafter, indictments were returned against such subsidiary corporations charging violations of sections 1 and 2 of the Act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies" 26 Stat. 209, 15 U.S.C.A. §§ 1, 2, commonly known as the Sherman Act. The

trial court ordered the proceedings abated as to such dissolved subsidiary corporations. The United States has appealed.

The indictments contained two counts. Count one charged appellees with a combination and conspiracy to restrain interstate trade and commerce in food products in violation of section 1 of the Sherman Act. Count two charged appellees with a combination and conspiracy to monopolize a substantial part of the interstate trade and commerce in food and food products in certain areas in violation of section 2 of the Sherman Act.

Motions were filed on behalf of each of the appellees by certain individuals as former directors of said appellee corporations, to vacate the criminal citations issued pursuant to the indictments, to quash the service of the citations, and to abate the indictment as to them. The sole ground of the motions is that prior to the return of the indictment, appellees had been dissolved in accordance with the laws of the respective states of their incorporation, and by reason thereof, could not be prosecuted.

The corporations were legally dissolved in compliance with the laws of their respective states prior to January 20, 1943, the date of the return of the indictment. The dissolutions were completed as follows: two on December 31, 1942; one on January 5, 1943; two on January 12, 1943; and one on January 16, 1943. The appellant demurred to the motion of the appellees on the ground that such dissolution did not terminate their existence or their liability to prosecution under the indictment. The district court overruled the demurrer holding that the corporate existence of each of such dissolved corporations having been completed prior to the return of the indictment, such dissolved corporations, and each of them, were civilly dead upon the date the indictment was returned, and by reason thereof the appellees could not be prosecuted. The court thereupon sustained the motions of appellees, vacated the citations, quashed the service, and treating the motions as pleas in abatement, ordered the indictment abated as to each of the appellees.

The appellant contends that the court erred in holding that the appellees could not be prosecuted for the reason that their corporate existence had terminated prior to the return of the indictment, and that the statutes of the states, where the appellees were incorporated and dissolved, permit the prosecution on the indictment returned in court.

It is well settled at common law and in the federal courts that a corporation which has been dissolved is as if it did not exist. The result of dissolution cannot be distinguished from the death of a natural person in its effect. As the death of a natural person abates all pending litigation to which he is a party, dissolution of a corporation at common law abates all litigation to which the corporation is a party, unless it is continued by the law of the state where it is dissolved for the purpose of prosecuting or defending civil suits or criminal actions. Thus the question, as to whether a corporation is continued for the purpose of prosecuting or defending civil suits or criminal actions, depends upon the law of the state of its incorporation. Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634; Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corporation, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147; State v. Arkansas Cotton Oil Co., 116 Ark. 74, 171 S.W. 1192, Ann.Cas.1917A, 1178; Mason v. Adoue et al., 30 Tex.Civ.App. 276, 70 S.W. 347; Miller Management Co., Inc., v. State, 140 Tex. 370, 167 S.W.2d 728.

If the statutes of the state where the corporation is incorporated and dissolved do not give authority to maintain such a prosecution, it does not exist. Then we must examine the pertinent statutes of the various states where appellees were created and dissolved.

Sec. 399, Civil Code of California 1941, in part provides:

"§ 399. Continuation of corporation after dissolution: A corporation which is dissolved by the expiration of its terms of existence, by forfeiture of existence by order of court, or otherwise, nevertheless shall continue to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it, and enabling it to collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not for the purpose of continuing business except in so far as necessary for the winding up thereof. No action or proceeding to which a corporation is a party shall abate by the dissolution of such corporation or by reason of proceedings for dissolution and winding up thereof. * * *"

Article 1374, Vernon's Anno. Civil Texas Stat. Vol. 3, reads as follows:

"Art. 1374. Abatement of suit.—Any action or cause of action for any fine, forfeiture or penalty that the State of Texas has, or may have, against any corporation chartered under the laws of this or any other state, territory or nation, shall not abate or become abated by reason of the dissolution of such corporation, whether voluntary or otherwise, or by the forfeiture of its charter or permit."

Article 1388, Id., reads as follows:

"Art. 1388. Liquidation by officers.—Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

Article 1389, Id., in part reads as follows:

"Art. 1389. Extension of existence.—The existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty, to settle up its affairs."

Article 1391, Id., reads as follows:

"Art. 1391. Suit on claim.—When no receiver has been appointed for said corporation, suit may be instituted on any claim against said corporation, as though the same had been dissolved, and service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved, and judgment may be rendered as though the corporation had not been dissolved, and the assets of said corporation shall be liable for the payment of such judgment just as if said corporation had not been dissolved."

Section 1954, Rev.Code of Delaware 1915, in part reads as follows:

"Continuation of Corporation After Dissolution, for Purposes of Suit, &c:—All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, * * *."

Section 2074, Rev.Code 1935, Section 42 of Delaware Corporation Law, as amended by the Laws of Delaware 1941, pp. 457, 458, 43 Del. Laws c. 132, § 11, in part reads as follows:

"Continuation of Corporation After Dissolution for Purposes of Suit, Etc.:—All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless be continued for the term of three years from such expiration or dissolution bodies corporate for the purpose of prosecuting and defending suits by or against them, * * *."

Section 2078, Section 46 of Delaware Corporation Law, in part reads as follows:

"Dissolution; No Cause for Abatement of Actions; Suggestion on Record; Action Continued Against Trustees or Receivers: —If any corporation organized under this Chapter becomes dissolved by the expiration of its charter or otherwise, before final judgment obtained in any action pending or commenced in any Court of Record of this State, against any such corporation, the said action shall not abate by reason thereof, * * *."

Section 1664, Nevada Compiled Laws 1929, in part reads as follows:

"§ 1664. Remain Bodies Corporate for Three Years. § 65. All corporations, whether they expire by their own limitation, or are otherwise dissolved, shall nevertheless for the term of three years from such expiration or dissolution be continued as bodies corporate for the purpose of prosecuting and defending suits by or against them, * * *."

Section 1666, Id., reads as follows:

"§ 1666. Trustees May Sue Or Be Sued. § 67. The persons constituted trustees as

aforesaid shall have authority to sue for and recover the aforesaid debts and property, by the name of the trustees of such corporation, describing it by its corporate name, and shall be suable by the same name for the debts owing by such corporation at the time of its dissolution, and shall be jointly and severally responsible for such debts, to the amounts of the moneys and property of such corporation which shall come into their hands or possession."

It will be observed that in Delaware and Nevada, a corporation is continued after dissolution "for the purpose of prosecuting and defending suits by or against them." The word "suit" is seldom used when referring to a criminal prosecution.

In Patterson v. Standard Acc. Ins. Co., 178 Mich. 288, 144 N.W. 491, 492, 51 L.R.A., N.S., 583, Ann.Cas.1915A, 632, in discussing the meaning of the word "suit", the court said:

"It must be conceded that the word 'suit,' as applied to legal controversies, both by the legal profession and others, is now used and recognized as a generic term of broad significance, often understood and used, even by Legislatures and courts, to designate almost any proceeding in a court, even, though rarely, being applied to a criminal prosecution in certain connections. Commonwealth v. Moore, 143 Mass. 136, 9 N.E. 25, 58 Am.Rep. 128. In its strict, technical meaning, more particularly where the distinction between law and chancery is retained, as in this state, is 'a proceeding in equity, the proper word for a litigation in chancery, a usual and technical designation of a proceeding in equity,' as distinguished from an action at law. 37 Cyc. 524.

"But, irrespective of lexicographers and precise technical definition, the expression 'criminal suit' is unnatural and awkward to the professional ear and is seldom used, even in common parlance. 'Suit,' in its general, unqualified use in legal documents, such as the one before us, naturally means, and should be construed as intended to include, the mode or manner authorized and adopted by law to redress civil injuries. Such is the view expressed by able authorities when carefully considering and directly treating the question. Many of these authorities are cited in 27 Cyc. 522. In the lengthy and exhaustive case of Cohens v. [Commonwealth of] Virginia, 19 U.S. 264, 6 Wheat. 264, 5 L.Ed. 257, Chief Justice Marshall says: 'What is a suit? We understand it to be the prosecution or pursuit of some claim, demand, or request; in law language, it is the prosecution of some demand in a court of justice. The remedy for every species of wrong is, says Judge Blackstone, "the being put in possession of that right whereof the party injured is deprived." The instruments whereby this remedy is obtained are a diversity of suits and actions, which are defined by the Mirror to be "the lawful demand of one's right;" or, as Bracton and Fleta express it, in the words of Justinian, "jus prosequendi in justicio qoud alicui debetur." Blackstone then proceeds to describe every species of remedy by suit; and they are all cases where the party suing claims to obtain something to which he has a right.'" State v. Chitty, 1 Bailey, S.C., 379; Pope v. State, 124 Ga. 801, 53 S.E. 384, 110 Am.St.Rep. 197, 4 Ann.Cas. 551; Leonardo v. Territory of New Mexico, 1 N.M. 291; Weston v. City Council of Charleston, 27 U.S. 449, 2 Pet. 449, 7 L.Ed. 481; Federal Housing Administration v. Burr. 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724; Worcester Color Co. v. Henry Wood's Sons Co., 209 Mass. 105, 95 N.E. 392; Callen v. Ellison, 13 Ohio St. 446, 82 Am.Dec. 448.

█ It is therefore apparent under the decisions that the word "suit" as used in the Delaware and Nevada statutes does not embrace a criminal prosecution.

█ The California statute, it will be observed, uses the phrase, "prosecuting and defending actions by or against it." Many of our courts have been called upon to define the word "action", and from a review of those authorities, the term is held to mean civil actions and does not embrace criminal prosecutions.

In Calkins v. State, 14 Ohio St. 222, 233, the court said:

"Thirdly. It is contended, that the term 'actions,' in its appropriate and legal signification, includes criminal prosecutions founded on penal statutes. Tomlin's ed. Jacob's Law Dic. vol. 1, p. 30, title, Action; Bacon's Abr., Action A; 2 Burril's Law Dic., vol. 1, p. 65, are cited in support of this proposition.

"It is true that the above writers describe 'actions,' as divided into criminal or civil; and it may formerly have been used in its most general sense, embracing criminal prosecutions and civil suits; but such is not the more modern use of the term."

In Harger v. Thomas, 44 Pa. 128, 130, 84 Am.Dec. 422, the court said:

"A criminal prosecution, although instituted by an individual, is not in any sense an action between the person instituting it and the prisoner. It is not an action at all. That is defined to be 'the legal demand of one's rights, or the form given by law for the recovery of that which is due:' Bouvier's Law Dict. A criminal prosecution is also defined to 'be a prosecution in a court of justice, in the name of the government, against one or more individuals accused of a crime:' 1 Ch. Crim. Law. The issue is between the government and the prisoner on a question of the guilt or innocence of the latter. It is not a question of property."

In Commonwealth v. Gallo, 275 Mass. 320, 175 N.E. 718, 725, the court said:

" * * * 'Action,' although a word of broad import, can hardly be interpreted in this connection as intended to include prosecutions for crime. Commonly it describes only civil proceedings. Boston v. Turner, 201 Mass. 190, 196, 87 N.E. 634; Pigeon's Case, 216 Mass. 51, 56, 102 N.E. 932, Ann. Cas.1915A, 737.'"

It is apparent that the California statutes do not include criminal prosecutions, but rather the provisions of the Civil Code of California 1941, sections 401 and 401a, indicate that the provision has reference to winding up the affairs of the corporation, payment of its debts, and the distribution of its assets, and not to criminal proceedings.

The Texas statute empowers the directors to maintain or defend judicial proceedings. It does include actions for a fine, forfeiture or penalty that the state of Texas has, or may have, against the dissolved corporation. But fines, forfeitures, or penalties due other sovereignties are necessarily excluded.

If this were a case where a fine had already been assessed in a pending cause, then there might be some occasion for argument, but, even then, under the authorities, the argument could not be affirmatively maintained. A brief consideration of the authorities demonstrates that such contention is not sound.

In United States v. Mitchell, C.C., 163 F. 1014, 1016, a well considered case, the principle is discussed. There, Mitchell, during his lifetime, had been sentenced to pay a fine, and the cause was pending at the date of his death. Counsel suggested the death of Mitchell and the court where the cause was pending, dismissed the writ. Subsequently, the government presented a claim to the administrator of the estate of Mitchell for the payment of the fine. As in the case at bar, the sole question was, whether or not the cause abated at the death of Mitchell? In passing upon the question, the court used the following language:

" * * * 'A fine is a pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor.' This is the definition of the term 'fine' as given by Bouvier, and adopted by 19 Cyc. p. 544. Imprisonment, in its general sense, is the restraint of one's liberty. As a punishment it is a restraint by judgment of a court or lawful tribunal, and is personal to the accused. It is a thing self-evident, therefore, that the death of a person upon whom such a judgment is imposed would put an end to an infliction or enforcement of the punishment. A fine being a pecuniary punishment imposed upon the person, it would seem that a like result would follow. If the accused should die before the punishment was in reality enforced or inflicted, he could not be pecuniarily mulcted or punished in person after he had ceased to exist. In passing judgment, whether of imprisonment or fine, it is the purpose of the court and the law that the accused be personally punished for the amendment of his life and of his deportment in the future, and to deter others from committing like offenses. If it be a personal infliction at the time of passing judgment, when, after judgment does it cease to be personal? Does it cease at the time of docketing, or at the time of the issuance and service of the execution, or of making the writ, or at any time? The answer is plainly that by no act in the enforcement of the judgment does it lose its original character as a personal infliction of punishment. If the fine is made out of his property, then as to that he is punished; but, if made out of the property that has descended to his heirs, or devised to his legatees, then it would seem he is not punished, for his day of temporal punishment has passed. It is, perhaps, within the power of Congress to constitute a fine a debt due from the accused, in the same relation as an ordinary debt, so that his estate, in case of his death, would be beholden for its payment. But this it has

840

not done, nor attempted to do. It has provided merely a process for the enforcement of the fine as a fine, but not as a debt. I am of the view, therefore, that, by the death of Senator Mitchell, the cause abated entirely, so that no enforcement of the payment of the fine imposed can be made out of his estate. This conclusion is supported by United States v. Pomeroy, C.C., 152 F. 279, the only case fairly in point to which my attention has been called. In speaking to the question in that case the court says: 'It [the fine] was imposed as a punishment of the defendant for his offense. If, while, he lived, it had been collected, he would have been punished by the deprivation of that amount from his estate; but, upon his death, there is no justice in punishing his family for his offense.'" See Mitchell v. United States, 199 U.S. 616, 26 S.Ct. 752, 50 L.Ed. 335; Schreiber et al. v. Sharpless, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65; United States v. Dunne, 9 Cir., 173 F. 254, 19 Ann.Cas. 1145; Dyar et al. v. United States, 5 Cir., 186 F. 614.

The death of an individual and the administration of his estate, and the dissolution of a corporation and the winding up of its affairs, are the same in principle.

In State v. Arkansas Cotton Oil Co., supra, 116 Ark. 74 171 S.W. 1192, 1193, a suit to recover from a dissolved corporation penalties for violation of the state anti-trust laws, the court said:

"We have here no action for the payment of debts. This is one by the state to recover a penalty; the purpose being not to recover a debt, but to punish for alleged infractions of the law. The statute makes no provision for the continuance or survival of any such action against a dissolved corporation.

"It is insisted that the suit cannot be abated as against the state, and for ground of that contention it is said that the state would be without a remedy. But we inquire: Why cannot the action be abated, if there is nothing in the statute which authorizes its continuance? The legislative will is supreme, and the unqualified right of dissolution is declared in the statute. The statute does, as before stated, contain a provision for the payment of debts and distribution of assets, but this does not, for obvious reasons, apply to the recovery of a penalty."

■ In the case at bar, no debt or claim is sought to be recovered. At the time of the dissolution of the appellees no actions were pending. There is, as we view it, nothing in the statutes of the various states that authorizes the prosecution against the dissolved corporations.

The judgment of the district court is affirmed.