**UNITED STATES of America**

v.

**ANACONDA AMERICAN BRASS COM-
PANY et al.**

Cr. No. 10725.

United States District Court
D. Connecticut.

Nov. 20, 1962.

John J. Galgay, Donald Ferguson, Edwin Weiss, Ralph S. Goodman, Ronald E. Somner, Bernard Mindich, Dept. of Justice, New York City, for plaintiff.

Donovan, Leisure, Newton & Irvine, by Walter R. Mansfield, New York City, Day, Berry & Howard, by Ralph C. Dixon, Hartford, Conn., John F. Barry, Jr., Bridgeport, Conn., for Bridgeport Brass Co.

BLUMENFELD, District Judge.

The Bridgeport Brass Company, a Connecticut Corporation (hereafter Bridgeport), one of eleven corporate and seven individual defendants charged with having engaged in an unlawful combination and conspiracy beginning at least in 1956 and continuing at least until sometime in 1961 in violation of § 1 of the Sherman Act by an indictment returned on September 12, 1962, moves to dismiss the indictment against it upon the ground that its corporate existence ceased on June 14, 1961 when its merger with National Distillers & Chemical Corporation, a Virginia corporation (hereafter National), was legally effected.

The merger was first considered in mid-1960 and, following extensive financial studies culminating in a January 25, 1961 report of Blyth & Co., financial consultants to Bridgeport, was approved in principle by Bridgeport's Board of Directors on January 30, 1961, some time prior to the impanelling of the Grand Jury. The Grand Jury was impanelled March 14, 1961. Bridgeport learned of the existence of the Grand Jury and its investigation when it was served on or about March 19, 1961 with a subpoena duces tecum directing the production of certain classifications of corporate documents. On June 14, 1961, more than six months before any witnesses were called to appear before the Grand Jury, and more than fourteen months before the

filing of the indictment, the merger of Bridgeport into National, pursuant to the approval of Bridgeport's Board on January 30, 1961, was approved by the stockholders of both corporations.

Bridgeport, in pressing its argument that under common law a merger or dissolution of a corporation terminates its existence, as death ends the life of a natural person, with the result that all actions are abated against it except those permitted to survive by the law of Connecticut, Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 634, 69 S.Ct. 762, 93 L.Ed. 931 (1948), contends that "whether Bridgeport continues to exist for the purpose of being prosecuted under the Sherman Act is determined by Connecticut law."

In the recent case of Melrose Distillers, Inc. v. United States, 359 U.S. 271, 79 S. Ct. 763, 3 L.Ed.2d 800 (1959), the Supreme Court, through Mr. Justice Douglas, stated the question applicable here:

> "The Sherman Law in § 8 defines 'person' to include corporations 'existing' under the laws of any State. The question whether a corporation 'exists' for any purpose is thus determined by reference to state law." (p. 272, 79 S.Ct. p. 764.)

In Melrose, the Supreme Court granted certiorari because of a conflict among the circuits [1] concerning the effect of dissolution or merger upon a Sherman Act indictment against a corporation. In deciding that a Sherman Act indictment pending at the time of the merger survived against merged corporations of both Maryland and Delaware, Mr. Justice Douglas said, in referring to the state law of Maryland:

> "We have found no Maryland decisions interpreting these sections; but we are satisfied that the term 'proceeding,' no matter how the state court may construe it, implies enough vitality to make the corporation an 'existing' enterprise for the purposes of § 8 of the Sherman Act." (p. 273, 79 S.Ct. p. 765.)

and, in making reference to the state law of Delaware:

> "We conclude that irrespective of how the Delaware statute may be construed by the Delaware courts, it sufficiently continued the existence of this corporation for the purpose of § 8 of the Sherman Act." (p. 274, 79 S.Ct. p. 765.)

Repetition of the statement that construction by the state's courts does not control, makes it clear that the basis for determination of the question of survival of the criminal responsibility of a corporation charged with violation of the Sherman Act, in some measure at least, lies beyond the sphere of state responsibility. The Supreme Court did not find it necessary in Melrose to "decide whether federal law alone would be sufficient to save a federal cause of action against a corporation dissolved under state law;" nor is it necessary to do so here. The mandate of Erie, plainly applicable in diversity cases where no claim of federal law is present, is not controlling here. There is no compulsion to follow the

---

[1] The Sixth and Tenth Circuits had construed the Delaware survival statute as requiring the abatement of criminal prosecutions upon merger of the defendant corporation, United States v. United States Vanadium, 230 F.2d 646 (10 Cir., 1953); United States v. Line Material Co., 202 F.2d 929 (6 Cir., 1953), while the Seventh Circuit in considering the same statute took a contrary position. United States v. P. F. Collier & Son Corp., 208 F.2d 936, 40 A.L.R.2d 1389 (7 Cir., 1953).

Since other states' merger statutes differ from Connecticut's, decisions construing them are not squarely in point here. See e. g. Alamo Fence Co. v. United States, 240 F.2d 179 (5 Cir., 1957); United States v. Cigarette Merchandisers Association, 136 F.Supp. 212 (S.D.N.Y.1955); United States v. Brakes, Inc., 157 F.Supp. 916 (S.D.N.Y.1958); United States v. Maryland State Licensed Beverage Association, Inc., 138 F.Supp. 685 (D.Md.1956); United States v. Maryland & Virginia Milk Producers, Inc., 145 F.Supp. 374 (D.Md.1956); United States v. Safeway Stores, Inc., 140 F. 2d 834 (10 Cir., 1944); United States v. San Diego Grocers Association, Inc., 177 F.Supp. 352 (S.D.Cal.1959).

state's law as expressed by its courts, as in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), or to determine the path which its courts would select. Bernhardt v. Polygraphic, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); See Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946); See generally Holmberg v. Armbrecht, 327 U. S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); But see the following cases decided before Melrose, United States v. Safeway, 140 F.2d 834 (10 Cir., 1944); United States v. Line Material Co., 202 F.2d 929 (6 Cir., 1953); United States v. United States Vanadium, 230 F.2d 646 (10 Cir., 1956). At the very least, in the absence of a clearly contrary state policy, Melrose does not demand the sacrifice of a federal objective as strong as that expressed in the Sherman Act on the altar of *strictissimi juris*. United States v. San Diego, 177 F. Supp. 352 (S.D.Cal.1959).

The defendant argues, however, in favor of a strict interpretation or literal reading of the state statutes. Calling attention to Conn.Gen.Stat. § 33–371(d) (2),[2] its contention is that, although the continuing corporation is to be responsible for all liabilities, obligations and penalties of the merging corporation, only "any claim existing or action or proceeding, civil or criminal, pending by or against any such corporation may be prosecuted as if such merger or consolidation had not taken place * * *" and that there was no "claim existing" or

"proceeding pending" at the time of the merger. It reads the words "civil or criminal" as modifying only the words "action or proceeding", and then argues that no criminal "proceeding" can be "pending" before an indictment is returned.

"Civil or criminal" modifies all three, including "claim." There is no public policy which supports the suggestion that the word "claim", as used in § 33–371 (d), makes a distinction between a moneyed obligation of a person incurred in its corporate capacity and one imposed upon it by federal criminal law. Cf. Sherwood v. Bridgeport, 123 Conn. 348, 351–352, 195 A. 744 (1937). Federal courts have defined claim as "the aggregate of operative facts that give rise to it," Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2 Cir., 1943); Birnbaum v. Birrell, 9 F.R.D. 72 (S.D. N.Y.1948), and to embrace acts in violation of the Sherman Act. United States v. Cigarette Merchandisers Association, 136 F.Supp. 212 (S.D.N.Y.1955).

■■ While there may be some doubt whether the Federal Grand Jury's investigation was a "proceeding" that was pending "against" Bridgeport for some purposes, Post v. United States, 161 U.S. 583, 16 S.Ct. 611, 40 L.Ed. 816 (1896), Connecticut's law regarded it as a proceeding within the scope of the merger statute. In State v. Ventola, 122 Conn. 635, 191 A. 726, 110 A.L.R. 578 (1937), where a state referee was appointed by the court to hear evidence as to unprofes-

2. Conn.Gen.Stat. § 33–371(d) provides:

"(d) If the surviving or new corporation is a foreign corporation, the effect of the merger or consolidation shall be the same as in the case of the merger or consolidation of domestic corporations except insofar as the laws governing such foreign corporation shall otherwise provide; provided, in any case: (1) Objecting holders of shares of any merging or consolidating domestic corporation shall be entitled to the same relief as in the case of a merger or consolidation of domestic corporations; and (2) the surviving or new corporation shall be responsible and liable for all the liabilities, obligations and penalties, including lia-

bility to objecting shareholders, of each of the domestic merging or consolidating corporations; and any claim existing or action or proceeding, civil or criminal, pending by or against any such corporation may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place; and any judgment rendered against any of the domestic merging or consolidating corporations may be enforced against the surviving or new corporation. Neither the rights of creditors nor any liens upon property of any domestic merging or consolidating corporation shall be impaired by the merger or consolidation."

sional conduct of attorneys and report his findings to the grievance committee of the county bar, the Supreme Court of Errors in holding that to be a "proceeding" said:

> "In Hale v. Henkel, 201 U.S. 43, 46, 26 S.Ct. 370, 50 L.Ed. 652, it is stated that the word 'proceeding' is not a technical one, and is aptly used by courts to designate an inquiry before a grand jury. In State ex rel. Russell v. Superior Court, 77 Wash. 631, 138 P. 291, the word was held to include proceedings for contempt committed out of the presence of the court. In State ex rel. Carleton v. District Court, 33 Mont. 138, 142, 82 P. 789, 790, it is stated: 'The term "proceeding," as ordinarily used, is generic in meaning and broad enough to include all methods involving the action of courts, whether controversies properly termed "actions" or "special proceedings," as distinguished from them.' The word is broader than the word 'action,' and clearly such a case as the one before us constitutes a 'civil proceeding' within the intent of the General Statutes, § 6168." (p. 639, 191 A. p. 728.)

The present case is not distinguishable merely because it is a criminal proceeding.

If, as the defendant suggests, the reason for permission in the statute to continue to use the name of the merged corporation in the enforcement of those liabilities, obligations and penalties which have already taken on an identification as a "claim existing", "action" or "proceeding pending" is merely to relieve the complaining party of any added burden of changing the party named as defendant after a proceeding has begun, that hardly seems a sufficient basis for an argument that the legislature of Connecticut meant to allow merging corporations to escape responsibility for criminal acts committed before the merger. Indeed, the permission granted by the statute fits the present situation because the Grand Jury proceedings relating to Bridgeport had been commenced prior to the merger; and to the extent that Bridgeport was engaged in an unlawful combination and conspiracy prior to the effective date of the merger, there was a "claim existing" against it and "proceedings" were pending against it.

The "reference to state law" which Melrose requires in order to answer "the question whether a corporation exists for any purpose" does not restrict examination to only the merger provisions of state law. Recognition of what interest the state has in regulating the effects of the termination of a corporation born under its laws may also be found in those particular circumstances where bringing it to an end is to completely undo it. Part X of Connecticut's Stock Corporation law is concerned with "Dissolution And Winding Up"; § 33–378, Effect of Dissolution, provides:

> "(c) The dissolution of a corporation shall not take away or impair any remedy available against such corporation for any right or claim existing at, *or for any liability incurred prior to,* dissolution, subject to the provisions of section 33–379." (Italics added.)

Subsection (c) of § 33–379 provides that any " * * * proceeding against a dissolved corporation for * * * any liability incurred prior to dissolution shall be barred if not commenced within three years * * *." By express language of this statute, there is no doubt that the dissolution and winding up of a Connecticut corporation leaves it with sufficient "vitality to make the corporation an 'existing' enterprise for the purposes of § 8 of the Sherman Act" for at least three years after it relinquishes its authority to create new obligations as a corporation. There would seem to be no reason to conclude that responsibility for the same activities for which a dissolved corporation remains liable are forgiven a merged corporation upon merger.

That the provisions designed to prevent a dissolving corporation from avoiding liability for acts committed during its existence, where there can be no question

of the finality of termination in the dissolution sections differ from those in the merger sections is understandable. An analogy is found in the Federal Corporation Tax laws, where, unlike the case of dissolution by liquidation, special provisions granting tax advantages to the shareholders of the merged corporation are based upon the theory that corporate mergers are merely changes in form and not in substance. See Hellerstein, Mergers, Taxes, and Realism, 1957, 71 Harvard Law Review 254, 256–261.

Just as the surviving corporation, coincident with the merger, possesses "all the rights, privileges, immunities and franchises" of each of the merging corporations, and all property of whatever nature belonging or due to each of the merged corporations without the necessity of any further act or deed to effect their transfer. Conn.Gen.Stat. §§ 33–369 and 33–371 make it equally clear that the surviving corporation *also* becomes responsible for the surviving corporation's liabilities, obligations and penalties of whatever sort, whether criminal or civil. Judicial literal-mindedness does not go so far as to ignore the fact that upon the merger of these two corporations the functional and legal advantages of the corporate form for the continuing conduct of Bridgeport's business has not even been impaired. It may fairly be assumed that its stability and effectiveness as a business unit has been strengthened. "Liability or obligation" has been construed to include penalties or fines imposed for violation of the Sherman Act. United States v. Cigarette Merchandisers Association (supra) and cases cited 136 F.Supp. p. 217, n. 7. Implicit in the legislative permission to continue its functional purposes as a fictional person is the assumption that it remains alive until it has fulfilled its responsibilities to others. United States v. Cigarette Merchandisers Association (supra); United States v. Maryland & Virginia Milk Producers, 145 F.Supp. 374 (D.C.1956); United States v. Brakes, Inc., 157 F.Supp. 916 (S.D.N.Y.1958).

I have found no hint in the laws of Connecticut of any policy to permit corporations created by it to escape criminal prosecution for acts committed by them before merger. On the contrary, resort to the criteria found in the state's own laws reveals a clear state policy to continue a merged corporation sufficiently in existence to require it to meet the charges in this indictment.

The motion to dismiss is denied.