CHRISTOPHER C. SHAYNE, Appellant, *v.* THE EVENING POST PUBLISHING COMPANY, Respondent.

1. ADOPTION OF COMMON LAW — CHANGED CONDITIONS. If the common-law rule that the liabilities of a corporation are extinguished by its dissolution ever obtained in New York state because of the provision of the Constitution of 1777 adopting such parts of the common law as were then the law of the colony, which is doubtful, the changed conditions surrounding the creation and dissolution of corporations and the distribution of the assets after dissolution have abrogated it.

2. ACTIO PERSONALIS MORITUR CUM PERSONA — CIVIL DEATH. The rule *actio personalis moritur cum persona* does not extend to the civil death of either persons or corporations.

3. SURVIVAL OF ACTION — CIVIL DEATH. No intention on the part of the legislature that the provisions of the Revised Statutes (2 R. S. 447, §§ 1, 2) authorizing the continuance of certain actions against the executors and administrators of wrongdoers, but excepting actions for libel, slander, assault and battery and false imprisonment, should extend to the civil death of either persons or corporations, can be gathered from the language of that act.

4. ABATEMENT AND REVIVAL — ACTION FOR LIBEL — DISSOLUTION OF CORPORATE DEFENDANT. An action for libel, which has abated because of the dissolution of the corporate defendant, may be continued and

revived against the former directors of the defunct corporation, in order to reach the assets of that corporation in their hands as the trustees created by section 30 of the General Corporation Law (L 1892, ch. 687) for the benefit of the stockholders.

*Shayne* v. *Evening Post Pub. Co.*, 56 App. Div. 426, reversed.

(Argued June 5, 1901; decided October 1, 1901.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 16, 1901, which reversed an order of Special Term granting a motion to revive and continue against the trustees of a dissolved corporation an action for libel commenced prior to its dissolution and denied such motion.

The following is the question certified : " The defendant having been dissolved by the expiration of the term limited in its certificate of incorporation, and this action being for libel, and the action having for these reasons abated, has the court power to revive or continue the same against the trustees of the dissolved corporation in office at the time of such dissolution ? "

*Edward J. Gavegan* for appellant.   By the statutes under which the corporation defendant was formed and existed, and which were in force at its dissolution, such dissolution could not take away nor impair any remedy given against the corporation for a liability previously incurred.   (L. 1848, ch. 40, § 19 ; L. 1875, ch. 611 ; *People ex rel.* v. *Comrs. of Taxes,* 95 N. Y. 554 ; Endl. Interp. Stat. § 203 ; Black Interp. Laws, 359, § 133.)   Section 5 of the Business Corporations Law is to be read together with section 30 of the General Corporation Law, as applicable to corporations formed under the Laws of 1848 and 1875, though they have not reincorporated under the Business Corporations Law.   (*Marstaller* v. *Mills,* 143 N. Y. 398.)   The word " creditors " in section 30 of the General Corporation Law includes a claimant in tort, whose cause of action against the corporation is thereby made a liability of the trustees.   (*Hepworth* v. *U. F. Co.,* 22 Civ. Pro. Rep. 407 ; 62 Hun, 257 ; 131 N. Y. 645 ; *Marstaller* v. *Mills,* 143 N. Y. 398 ; *People* v. *T. S. & I. Co.,* 82 Hun,

303; *Matter of Yuengling B. Co.,* 24 App. Div. 223.) · It was not the intent of the legislature, by the revision of 1890 and 1892, to diminish or remove the existent liabilities of corporations. (*Matter of N. Y. Oxygen Co.,* 24 Civ. Pro. Rep. 398; *Perry Co.* v. *Jefferson Co.,* 94 Ill. 214; Endl. Interp. Stat. § 264.) The maxim "*actio personalis moritur cum persona*" does not apply to the case at bar. (*Finlay* v. *Chirney,* L. R. [20 Q. B. Div.] 502; 2 Pollock.& M. Hist. Eng. L. [1st ed.] 255, 448, 449, 458; *Hubert's Case,* 3 Coke, 11; *Cole* v. *M. I. Co.,* 133 N. Y. 164; *People* v. *Nat. T. Co.,* 82 N. Y. 283; *Hastings* v. *Drew,* 76 N. Y. 9; *Bartlett* v. *Drew,* 57 N. Y. 587; *Bacon* v. *Robertson,* 18 How. 480; *Tinkham* v. *Borst,* 31 Barb. 407; *Curran* v. *State of Arkansas,* 15 How. 304; 2 Kent's Comm. 307; *State* v. *Standard O. Co.,* 49 Ohio, 137.) ·

*Lawrence Godkin* for respondent. The defendant died as an individual might die, through lapse of years, and had it been an individual the action clearly could not be revived. (*More* v. *Bennett,* 65 Barb. 338; Ogden on Libel, 355; Townshend on Libel, § 299; *Greeley* v. *Smith,* 3 Story, 658; *Bank of Selma* v. *Colby,* 21 Wall. 609; R. S. [Banks Bros.' 9th ed.] 1907; *Oregin* v. *Brooklyn C. R. R. Co.,* 75 N. Y. 192; *Matter of Meekin* v. *B. H. R. R. Co.,* 164 N. Y. 145; *Hegerich* v. *Keddie,* 99 N. Y. 258; *Gorden* v. *Strong,* 158 N. Y. 408.) There is no difference in the rule as to the survivability of an action for libel, where the deceased is a corporation, from that which exists where it is an individual. (*Marstaller* v. *Mills,* 143 N. Y. 398.) An action sounding in pure tort could not be revived against· the trustees of the corporation even if the Manufacturing Act of 1848 had not been repealed. (*S. Nat. Bank* v. *Colby,* 21 Wall. 609; *Greeley* v. *Smith,* 3 Story, 658; *Mumma* v. *Potomac Co.,* 8 Pet. 281; *Oregin* v. *B. H. R. R. Co.,* 75 N. Y. 192; *Gorden* v. *Strong,* 158 N. Y. 408; *Grafton* v. *U. F. Co.,* 19 N. Y. Supp. 966; *Matter of Yuengling B. Co.* 24 App. Div. 223; 9 Am. & Eng. Ency. of Law [2d ed.], 611.)

Parker, Ch. J.    Plaintiff brought this action to recover damages for alleged libels published in the defendant's newspaper in February, 1899, and when the action came on for trial on the 15th day of May, 1900, the defendant's attorney brought to the attention of the court the fact that the corporate existence of the defendant had terminated on the next preceding first day of January.    As the action had abated, the plaintiff thereafter moved the court at Special Term for an order continuing and reviving it against the former directors of the defunct corporation and the motion was granted.    The Supreme Court in its Appellate Division, however, reached the conclusion that the death of the corporation operated to destroy the cause of action and so it reversed the order. There was a difference of view in the court, but the majority apparently felt constrained to follow the occasional *dicta* of judges that in actions of slander, libel, assault and battery, or false imprisonment, the property of the shareholders of the corporation is no more subject to pursuit after the dissolution of the corporation than is the property of an individual after his death.    The statute providing for the maintenance of actions against executors or administrators of a wrongdoer, expressly excepts causes of the character last above named from the operation of the statute.    (2 R. S. 447.) This statute modified the rule of the common law so as to permit actions to be brought against executors or administrators for wrongs done to property rights or interests of persons; but it does not affect one way or the other causes of action against corporations.    Nor is there any statute in this state indicating a legislative policy to prevent the maintenance of actions against a corporation or its trustees after dissolution, whether the cause of action be founded on a wrong or otherwise.    Nor are we foreclosed by authority in this court from considering the question on its merits, for neither the diligence of counsel nor patient investigation on our part has brought to light any decision of this court bearing directly upon the question.

For this court to lay down a rule which would cut off causes

of action for wrongs against a corporation upon its dissolution would seem to be both arbitrary and unjust, and in some cases it could be taken advantage of by the officers of the corporation by permitting the charter to expire and afterwards reorganizing, instead of renewing the charter before its expiration. In this case there is no question of the good faith of the defendant. Its charter was allowed to expire by an oversight and for a little time it proceeded as if its charter were in full force and effect. But if it be true, as the defendant contends, that the termination of the charter operated of itself to put an end absolutely to all causes of action for wrongs, then it matters not whether the termination be due to oversight or design, for it is the civil death of the corporation, and not the cause of its death that destroys causes of action for wrongs. It hardly need be suggested that if such were the established rule there would be found plenty of persons interested in corporations who would plan to so take advantage of it as that meritorious causes of action might be destroyed with only the temporary embarrassment and expense incident to the organization of a new corporation. Of still further importance, however, is the fact that such a rule would work unjustly in every case to a plaintiff in an action for libel such as this one, assuming as we should that the plaintiff has a meritorious cause of action.

If a recovery be had during the lifetime of the corporation, the moneys required to satisfy the judgment are necessarily taken from assets belonging to the stockholders and reduce the value of their holdings in the amount required to pay the judgment. If a judgment be recovered after the termination of the existence of the corporation the result is the same; for the avails of all the assets of the corporation after payment of all just debts and claims owing by it must be distributed among the stockholders if the corporation be wound up, or if another course be taken and a reorganization be had, the assets of the new corporation are reduced in value in the amount required to pay the judgment. So far as the stockholders, who are the owners of all of the assets of the corporation are

concerned, therefore, it matters not whether the judgment be taken before dissolution or afterward, for in any event it is the assets of the corporation which are used in satisfying the demand.   In the one case the action is prosecuted to judgment against the corporation, and in the other against the directors, who by force of the statute have become the trustees of the assets of the corporation for the benefit of the stockholders.   But this is a difference of form, not of substance, for both the corporation and the trustees represent the assets out of which the judgment must be satisfied and in which the stockholders are alone interested after the satisfaction of all just debts and demands.   It is apparent, therefore, that the stockholders have no just ground upon which to predicate a claim that the party who has been wronged by the corporation shall be deprived of his cause of action in the event of the dissolution of the corporation.   On the other hand, the plaintiff needs his damages, and in some cases the vindication which an award of damages brings; none the less because, designedly or carelessly, the charter of the corporation is permitted to expire.

If we are right in the view thus expressed as to the merits of the controversy, there can be no doubt what would be the decision of the court were the question one which had never before been up for consideration in the courts of this country or England.   It is urged, however, that notwithstanding that the merits appeal strongly in the plaintiff's behalf, and that there is an utter absence of decisions in this state standing in the way of a just determination, we are prevented from making that determination by a rule of the common law of England which concededly would have cut off such a claim as plaintiff's.   Inasmuch as the Constitution of 1777 provided that " Such parts of the common law and of the acts of the legislature of the colony of New York as together already form the law of the said colony   *   *   *   shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same," it is contended that the common law is now in force except so far as it may

have been expressly altered by acts of the legislature of this
state.   This court has interpreted this provision of the Con-
stitution to mean not that all the common law of England
was the law of the colony at the time of the making of the
Constitution, but only so much of it as was applicable to the
circumstances of the colonists and conformable to our institu-
tions.   (*Cutting* v. *Cutting*, 86 N. Y. 522, 529; *Williams* v.
*Williams*, 8 N. Y. 525, 541.)

It is at least doubtful, as will be apparent when we come
to consider briefly the history of the rule, whether it did
become a part of the law of this state; but we prefer to rest
our decision on the ground that if such a rule were applicable
to this state at the time of the adoption of the Constitu-
tion, the effect of subsequent legislation regarding corpora-
tions created by and under the laws of this state has been
such as to render it wholly inapplicable.   This rule had its
origin when corporations were either municipal, ecclesiastical,
or eleemosynary, and business corporations were unknown.
There were no stockholders or natural persons who were
entitled to the assets of the deceased corporation and, as in
the case of an individual dying without heirs, the personalty
went to the king, while to prevent the realty from escheating
to the king it was held that it reverted to the donor upon the
ground that the grant being made to the corporation for pub-
lic or charitable uses it was made only for its life.   Against
those corporations all causes of action whether upon contract
or for tort were extinguished, and so, too, were all causes of
action which the corporation had against individuals.   (Kyd
on Corporations — published 1793 — vol. II, page 516;
Angell and Ames on Corporations, §§ 779 and 779a; Grant
on Corporations, 804.)

Angell and Ames in § 779a say : " The rule of the common
law in relation to the effect of dissolution upon the property
and debts of a corporation has in fact become obsolete and
odious.   Practically it has never been applied in England to
insolvent or dissolved monied corporations.   * * *   Indeed,
at this day, it may well be doubted whether in the view at

least of a court of equity it has any application to other than
public and eleemosynary corporations with which it had its
origin." It will be observed that the learned authors do not
suggest that it was never applied by the courts to other than
public and eleemosynary corporations, but that it is no longer
applied.

In this state the rule has never been applied to business
corporations, and as early as 1811 an act was passed constitut-
ing the directors of such corporations, in the event of volun-
tary dissolution, trustees to settle its affairs and divide the
money among the stockholders after paying the debts due and
owing by the corporation at the time of its dissolution. This
statute, without substantial change, is now to be found in
section 30 of the General Corporation Law, and when it is
considered in connection with the other provisions of the
statute relating to business corporations we find that the
ancient rule that the liabilities of the corporations as well as
the debts owing to them are extinguished by the dissolution
of the corporations, the personalty vesting in the king and
the real estate in the donor, has been entirely ignored by the
law-making power in this state, which has instead provided a
more equitable method for the distribution of the assets,
which secures to the stockholders what is left after those are
satisfied who have valid claims against the corporation. So
if it be technically true that the rule once prevailed in this
state because of the language of the Constitution of 1777 —
which I doubt — it is no longer in force because of the changed
conditions surrounding the creation and dissolution of corpo-
rations and the distribution of the assets after dissolution.
Ram in his work on Legal Judgments (page 73) states the
rule, as it has often been applied by the courts and as we find
it our duty to apply it in this case, in these words: "When a
rule relates to the nature of things, as such nature existed at
a former period, and the reason of the rule corresponds with
that nature, then at an after time, if the nature of the things
is altered, and by this alteration the rule is become too gen-
eral, and the reason given for it fails, the rule in a case of this

kind is no longer binding.    In *Davies* v. *Powell* (Willes, 46), WILLES, Ch. J., giving the opinion of the court, says, ' When the nature of things changes, the rules of law must change too.' "

Nor do we think the rule *Actio personalis moritur cum persona* should be applied.    It has long been in force both in England and this country, and in this state has received legislative approval in so far as causes of action for libel, slan- der and assault and battery are concerned, but our decisions have not extended the rule. to the civil death of either per- sons or corporations.    Nor has the language of our statute which authorizes the continuance of certain actions for moneys against the executors and administrators of wrongdoers, but excepts actions for libel, slander, assault and battery and false imprisonment, been held to include the civil death of either individuals or corporations, and it is sufficient for our present purpose to say that such an intent on the part of the legisla- ture cannot be spelled out of the language employed by it. It is said that the rule of the common law, which has not been interfered with by statute so far as actions for libel are concerned, may, by a process of analogical reasoning, be so extended as to include artificial " persons," and death resulting from an act of God to embrace death of a corporation by exe- cution or other operation of law, and, further, that such reason- ing has led learned judges to assume it to be the law that the dissolution of a corporation relieves its assets from that which would otherwise constitute a legal burden — that of respond- ing for the damages occasioned to others through the miscon- duct of its representatives or agents.    If it be true that, reasoning by analogy, but a single advance step need be taken in order to support the defendant's position, that step should not be taken, however short it may be, inasmuch as the result reached would be without support in the elements of justice, as we have already attempted to show.    It is not a short step, however, for the reason of the rule preventing suit against an executor for the wrongs of his testator is stated to be that as neither the executors of the plaintiff nor those of the defend- ant *have committed in their own personal capacity any man-*

*ner of wrong or injury*, they should not be prosecuted for torts in actions which were originally designed for the punishment of the wrongdoer. On the other hand, the object of actions *ex contractu* being to reach "the property rather than the person, *in which the executors now have the same interest that their testator had before*," it was decided that they should be revived and continued against the executor. (1 Woerner's Administration, §§ 290, 291, 292, and notes; *Phillips* v. *Homfray*, L. R. [24 Ch. Div.] 457; *Finlay* v. *Chirney*, L. R. [20 Q. B. Div.] 502–504.)

The remedy of a plaintiff, in an action for libel to recover damages, is against the property of the corporation solely. Whether his judgment be rendered against the corporation or against the trustees after dissolution, he can have satisfaction only out of the assets of the corporation. The object of his action, therefore, is to reach the property of the corporation, and, hence, it is in all respects within the very reason assigned in support of the right of a creditor to bring actions *ex contractu* against the executor.

Our conclusion is that as the plaintiff could have had satisfaction of his claim — if he have one — out of the assets of the defendant corporation had he prosecuted his action to judgment before the termination of the latter's corporate life, so should he now have satisfaction as he has taken no step which either forfeits or affects his right, unless some rule of law stands across the pathway leading to justice for him, and after a careful examination of the subject we have been unable to find any such rule of law in this state.

The question certified to this court by the Appellate Division should be answered in the affirmative, its order reversed and that of the Special Term affirmed, with costs.

BARTLETT, HAIGHT, VANN, LANDON, CULLEN and WERNER, JJ., concur.

Ordered accordingly.