**UNITED STATES of America**

v.

**CIGARETTE MERCHANDISERS ASSO-
CIATION, Inc., et al., Defendants.**

United States District Court
S. D. New York.

Nov. 23, 1955.

John D. Swartz, Richard Owen, Louis Perlmutter, Ralph Goodman, Attys., Dept. of Justice, New York City, Richard B. O'Donnell, New York City, of counsel, for United States.

Parker, Chapin & Flattau, New York City, for defendant Rowe Corp., Mervin C. Pollak, New York City, of counsel.

WEINFELD, District Judge.

The indictment herein, returned in April, 1954, charged the defendant, the Rowe Corporation, and thirteen others with violations of §§ 1 and 2 of the Sherman Act.[1]

The Rowe Corporation, hereinafter called Rowe, moves to dismiss the indictment as against it upon the ground that its corporate existence ceased on September 30, 1955 as a result of its merger and consolidation with another corporation in consequence of which this prosecution has abated.

Upon arraignment all defendants pleaded not guilty. Thereafter the defendants other than Rowe pleaded nolo contendere[2] and are now awaiting sen-

---

1. 15 U.S.C.A. §§ 1, 2.

2. Pursuant to leave granted under Rule 11 of the Federal Rules of Criminal

tence. Rowe requests that in the event of the denial of this motion it too be permitted to plead nolo contendere.

Rowe was a New York corporation. On September 23, 1955, its stockholders voted to merge and consolidate with the Automatic Canteen Company of America, a Delaware Corporation. The latter corporation is not named a defendant in the indictment. The consolidation was effected on September 30, 1955, when the two corporations filed the requisite certificates with the Secretaries of State of New York and Delaware.[3]

Under the consolidation the Automatic Canteen Company of America became the surviving constituent and Rowe's existence ended. Accordingly Rowe contends that it may no longer be prosecuted under the pending indictment. It relies of course upon the common law doctrine that the dissolution or merger of a corporation is analogous to the death of an individual with the result that all pending actions or proceedings by or against it are abated except insofar as the State of creation may artificially continue its life for a stated period to permit the winding up of its affairs.[4] The defendant presses that under New York law governing consolidation, a merged corporation is not continued for pur-

poses of criminal prosecution or the payment of a fine or penalty which may be imposed in a criminal prosecution.

The Government concedes [5] that the issue must be resolved by reference to New York law but argues that under the applicable statute, the corporation still remains subject to prosecution under the pending indictment.

Preliminarily it may be observed that practically all states have statutes which in authorizing the dissolution of corporations, whether voluntarily or otherwise provide that for a specified period thereafter "suits", "actions" or "proceedings" may be brought by or against the corporation and that pending actions shall not abate. The purpose of course in keeping the corporation "alive" is to ameliorate the unjust and harsh results to creditors and stockholders alike if the strict common law doctrine of corporate death and abatement were applied.

New York's consolidation statute provides for the survival of all "actions or proceedings". The parties are in accord that the applicable provision is § 90 of the New York Stock Corporation Law, which provides:

"The rights of creditors of any constituent corporation shall not in any manner be impaired, nor shall any *liability*

Procedure, 18 U.S.C.A. See Memorandum of Sugarman, J. filed November 3, 1955, 136 F.Supp. 212.

3. § 91 of the New York Stock Corporation Law, McK.Consol.Laws, c. 59; 8 Del.C. § 252 Delaware General Corporation Law.

4. Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 634, 69 S. Ct. 762, 93 L.Ed. 931; Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U. S. 257, 47 S.Ct. 391, 71 L.Ed. 634; Chicago Title & Trust Co. v. Forty-one Thirty Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147; Matter of National Surety Co., 286 N.Y. 216, 36 N. E.2d 119; Walder v. Paramount Publix Corporation, D.C.S.D.N.Y., 132 F.Supp. 912, 917.

5. This concession makes it unnecessary to consider the broader question, an open one in this Court's view, as to whether enforcement of a Federal criminal law

may be aborted by state action which permits a corporate defendant to end its existence by dissolution, consolidation or merger. The importance of the issue, which thus far has not been passed upon by the Supreme Court, is emphasized by the recent amendment increasing the fine for Sherman Act criminal offenses from $5,000 to $50,000. Ch. 281, Public Law 135, approved July 7, 1955, 15 U.S. C.A. §§ 1–3, U.S.Code Cong. and Admin. News 1955, at page 3081. It has been suggested that the prospect of substantial fines under the not uncommon multi-count indictment may, if dissolution works absolution, encourage such proceedings, and also tend to breed disrespect for law, if indeed it does not encourage lawlessness. See, Marcus, Suability of Dissolved Corporations—A Study in Interstate and Federal-State Relationships, 58 Harv.L.Rev. 675, 703; Comment, Corporate Dissolution and the Anti-Trust Laws, 21 U. of Chi.L.Rev. 480.

*or obligation* due or to become due, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; * * * and no *action or proceeding* then pending before any court or tribunal in which any constituent corporation is a party * * * shall abate or be discontinued by reason of such consolidation, but may be prosecuted to final judgment, as though no consolidation had been entered into; * * *." [Emphasis supplied.]

The defendant argues that the "action or proceeding" referred to in the saving clause of § 90 refers only to civil suits and that "liability or obligation" contemplates only corporate debts or civil liabilities and does not embrace a fine or a penalty which has been or may be imposed for a public wrong. I believe these contentions are without substance both as a matter of construction of the statute and the public policy which underlies it.

On the construction issue, the answer is provided in a most persuasive manner by New York State's General Construction Law [6] which defines "action":

Section 11–a provides: " 'Action' when applied to judicial proceedings, signifies an *ordinary prosecution in a court of justice, by a party against another party, for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.* Actions are of two kinds: civil and criminal."

Sections 16–a and 18–a, respectively,. define "civil action" and "criminal action".[7]

Another section of the General Construction Law makes its provisions "applicable to every statute" except where it. appears that a different meaning or application is intended.[8] So applied to § 90 of the Stock Corporation Law, "action" as contained therein must be deemed to include both "civil" and "criminal" actions as defined in § 11–a of the General Construction Law. Nothing in § 90 of the Stock Corporation Law suggests that the words "action or proceeding", clearly of broad generic meaning,. were used in a constricted sense so as to encompass only civil actions and to exclude criminal actions or proceedings. *The words in their ordinary and commonly accepted sense embrace every form and kind of litigation, civil and criminal.*[9] Here added force is given to the all inclusive scope of "action" by the application of its precise legislative definition in the General Construction Law.

Other New York statutes and decisions. furnish additional authoritative support to the broad scope of the words "action or proceeding". Under the state anti-monopoly statute, the Donnelly Act, interdicted acts constitute criminal offenses the prosecution of which rests with the Attorney General.[10] Thus § 347 provides: "In all such *proceedings,* the attorney general may appear * * * before any court of record or any grand jury and * * * perform all the duties in respect of such *actions or proceedings* which the district attorney

6. McK.Consol.Laws, c. 22, General Construction Law, c. 27.

7. Section 16–a: "The term 'civil action' means any action except when prosecuted in the name of the people of the state of New York, as plaintiffs against a party charged with crime." McK.Consol. Laws, General Construction Law.
   Section 18–a: "A 'criminal action' is prosecuted in the name of the people of the state of New York, as plaintiffs, against a party charged with crime." McK.Consol.Laws, General Construction Law.

8. Section 110: "This chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter." McK.Consol. Laws, General Construction Law.

9. United States v. P. F. Collier & Son Corp., 7 Cir., 208 F.2d 936, 940, 40 A.L.R. 2d 1389.

10. McK.Consol.Laws, c. 20, General Business Law, § 340 et seq.

would otherwise * * * perform." [Emphasis supplied.] Here "actions or proceedings", the identical words used in § 90 of the Stock Corporation Law, exclusively relate to criminal prosecutions.

Finally, the New York Court of Appeals has construed "action"[11] to include both criminal and civil actions to the extent that testimony of deceased persons may be read at a second criminal trial.[12]

But apart from any statutory definition, I am also of the view that since the clear public policy of the state with respect to a dissolved or consolidated corporation is that it shall, for a determined period beyond its dissolution, be entitled to pursue its rights and also to remain suable for its debts and obligations, that the public purpose also contemplates the right of the community to vindicate any charge against the corporation for crimes it may have committed prior to dissolution. And unless the legislative purpose to abate a criminal prosecution is clear and unequivocal, the public policy of the state to hold a corporation liable for acts committed during its existence should not be defeated by dialectical definitions which serve to discriminate against the community at large.[13]

To limit "action or proceeding" to civil suits would result in anomolous situations. Here the Government simultaneously with the filing of the indictment, also commenced a civil suit charging the defendant with identical violations of the Sherman Act. Under the construction contended for by the defendant, the criminal prosecution is abated while the civil suit may be "prosecuted to final judgment".[14] Further, an injunction may be issued in a civil anti-trust suit commenced by the Government notwithstanding the dissolution of a defendant.[15] And to point up the extreme result which would follow from such a narrow construction, if a private civil suit for treble damages had been commenced there would be no question of the survival of that suit or claim, notwithstanding the merger of consolidation.[16] It would be contrary to sound public policy to permit a defendant charged with criminal conduct to foreclose the vindication of public rights by its voluntary action. Dissolution should not work absolution unless the legislative intent is clear beyond question.

I have not overlooked the defendant's other contentions. Contrary to its view, the words "liability or obligation" have been construed, and in my view correctly so, to include penalties or fines imposed for violations of the Sherman anti-trust statute and quasi-criminal actions or proceedings.[17]

As to its argument that the heading of § 90, "Rights of creditors of consolidated corporations" manifests a legislative purpose that only civil actions are intended to survive consolidation, the short answer is the firmly entrenched rule that the heading of a section cannot limit the plain meaning of its text.[18]

11. See New York Civil Practice Act, § 4, which is identical with § 11–a of the General Construction Law.

12. People v. Elliott, 172 N.Y. 146, 64 N.E. 837, 60 L.R.A. 318.

13. Cf. Shayne v. Evening Post Pub. Co., 168 N.Y. 70, 74, 61 N.E. 115, 55 L.R.A. 777.

14. McK.Consol.Laws, Stock Corporation Law, § 90.

15. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 307–310, 17 S.Ct. 540, 41 L.Ed. 1007; United States v. Bates Valve Bag Corp., D.C. Del., 39 F.2d 162.

16. Cf. United Copper Securities Co. v. Amalgamated Copper Co., 2 Cir., 232 F. 574; Imperial Film Exchange v. General Film Co., D.C.S.D.N.Y., 244 F. 985.

17. In re Grand Jury Subpoenaes Duces Tecum Addressed to Canadian International Paper Co., D.C.S.D.N.Y., 72 F. Supp. 1013, 1021; People v. Bankers' Capital Corp., 137 Misc. 293, 241 N.Y.S. 693. Cf. Douglas v. Perlstein, 170 Misc. 561, 10 N.Y.S.2d 479, 481.

18. People v. O'Brien, 111 N.Y. 1, 59, 18 N.E. 692, 2 L.R.A. 255. Cf. Brotherhood of Railroad Trainmen v. Baltimore & Ohio R. R. Co., 331 U.S. 519, 528–529, 67 S.Ct. 1387, 91 L.Ed. 1646.

I have also considered such cases as United States v. Safeway Stores, Inc., 10 Cir., 140 F.2d 834;[19] United States v. Line Material Co., 6 Cir., 202 F.2d 929, and others relied upon by the defendant which construed statutes comparable to New York's and held they did not abrogate the common law abatement of criminal proceedings upon dissolution or consolidation of corporations.[20] It would not be fruitful to consider these cases since with but one exception all essentially turned upon construction of pertinent statutes of states other than New York. In United States v. Union Carbide & Carbon Corp.[21] the District Court did consider a New York statute[22] which contained the words "liabilities or obligations" and reached a conclusion contrary to my construction. With all due deference, I must point out that there is direct New York authority[23] holding that those words do not preclude the maintenance of quasi-criminal action to recover a fine or penalty against a corporation which had previously surrendered its certificate of authority and further, the District Court, in adopting "the philosophy of the Safeway case"[24] appeared not to have considered or noted New York's General Construction Law defining "action" cited above.

The motion to dismiss the indictment upon the ground that the proceedings had abated by reason of the consolidation of the defendant is denied. In view of the fact that all other defendants were heretofore granted leave to plead nolo contendere under the order of Judge Sugarman, no sound reason appears why similar leave should not be granted to this defendant, and accordingly the alternative application is granted.

Settle order on notice.

---

19. The Seventh Circuit in United States v. P. F. Collier & Son Corp., 7 Cir., 208 F.2d 936, 40 A.L.R.2d 1389, took a diametrically opposite view in considering one of the statutes passed upon by the Tenth Circuit.

20. For a discussion of these and related cases see Comment, Corporate Dissolution and the Anti-Trust Laws, 21 U. of Chi.L.Rev. 480.

21. D.C.Colo., 132 F.Supp. 388.

22. §§ 85 and 105 of the Stock Corporation Law, McK.Consol.Laws, c. 59.

23. People v. Bankers' Capital Corp., 137 Misc. 293, 241 N.Y.S. 693.

24. 132 F.Supp. 388, 391. In the Safeway case, the Court did not pass upon a New York statute. It had under consideration the dissolution laws of the States of Texas, California, Nevada and Delaware.