**ALAMO FENCE COMPANY OF HOUSTON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16089.

United States Court of Appeals Fifth Circuit.

Jan. 4, 1957.

**180**

Frank O. Barnes, Houston, Tex., for appellant.

L. Glen Kratochvil, Asst. U. S. Atty., Malcolm R. Wilkey, U. S. Atty., C. Anthony Friloux, Jr., Asst. U. S. Atty., Houston, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

Alamo Fence Company, a Texas Corporation, joined its president and general manager, its office manager, and a number of its employees in forging and altering signatures on documents and securing loans on such counterfeit documents from two Houston, Texas, banks during the year 1953. On October 24, 1955, the appellant corporation and certain of its officers and employees were indicted in 19 counts. Count 1 through 18 charged the defendants with submitting false statements on FHA insured loans in violation of 18 U.S.C.A. § 1010,[1] and Count 19 charged a conspiracy under 18 U.S.C.A. § 371.[2] On November 14, 1955, twenty-one days after the return of the indictment, appellant corporation was voluntarily dissolved in accordance with the laws of Texas. The Trustees of the dissolved corporation then appeared and moved to dismiss the indictment on the ground "that said corporate defendant is no longer in exist-

---

1. "§ 1010. *Federal Housing Administration transactions*

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully over-

values any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."
18 U.S.C.A. § 1010.

2. § 371. *Conspiracy to commit offense or to defraud United States*

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."
18 U.S.C.A. § 371.

ence, and is no longer subject to the jurisdiction of this Honorable Court." The motion to dismiss was carried along with the case. Trial to a jury resulted in a verdict finding appellant guilty under the conspiracy count and under thirteen of the substantive counts. The district court, after filing a well considered memorandum opinion, overruled the motion to dismiss and sentenced appellant corporation to pay a fine of $500.00 on each of the fourteen counts, totaling $7,000.00. The sole question to be decided is whether appellant remained subject to criminal prosecution under the indictment after its voluntary dissolution in accordance with the laws of Texas, the state of its incorporation.

■■ No contention is made, or can reasonably be made, that the federal statutes involved are not directed against corporate misconduct. *"Whoever"* commits the inhibited acts is covered by Section 1010, while Section 371 refers to a conspiracy of "two or more *persons."* The context of neither section indicates any meaning other than that a "corporation" is included in accordance with 1 U.S.C.A. § 1.[3]

■ The complete dissolution of a corporation in accordance with the laws of the state of its creation ordinarily has a legal effect on actions, suits and proceedings comparable to that of the death of a natural person. Several opinions of the Supreme Court and of lower federal courts have made use of that common analogy.[4]

■ All of the cited cases agree that a dissolved corporation continues in existence at least for the purposes specified in the laws of the state effecting its dissolution. The Supreme Court cases cited in footnote 4, supra, under their factual situations, do not control the present controversy.[5] Appellant's prin-

---

3. "In determining the meaning of any Act of Congress, unless the context indicates otherwise—

 \*   \*   \*   \*   \*

"the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C.A. § 1.

4. Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634; Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp., 302 U.S. 120, 125, 58 S. Ct. 125, 82 L.Ed. 147; Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 634, 69 S.Ct. 762, 93 L.Ed. 931; Eastman, Gardiner & Co. v. Warren, 5 Cir., 109 F.2d 193; United States v. Safeway Stores, 10 Cir., 140 F.2d 834, 836, et seq.; United States v. Line Material Co., 6 Cir., 202 F.2d 929, 931; United States v. P. F. Collier & Son Corp., 7 Cir., 208 F.2d 936, 937, 40 A.L.R.2d 1389; United States v. United States Vanadium Corp., 10 Cir., 230 F. 2d 646, 648; United States v. Cigarette Merchandisers Ass'n, D.C.S.D.N.Y., 136 F.Supp. 214, 215; United States v. Maryland State Licensed Beverage Ass'n, D. C.Md., 138 F.Supp. 685, 708, et seq.; United States v. Maryland & Virginia Milk Producers, Inc., D.C.D.C., 145 F. Supp. 374.

5. In Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634, it was claimed by the State that the Oklahoma Natural Gas Co. was obligated to make certain refunds to its patrons. Both parties joined in moving for the substitution of a new party appellant on the ground that the Oklahoma Natural Gas Co. had dissolved and a new corporation had assumed its debts, liabilities and obligations. The Supreme Court denied the motions to substitute without prejudice to a renewal on a fuller showing of the effects of the dissolution on the pending proceedings.

In Chicago Title & Trust Company v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L. Ed. 147, it was held that an Illinois corporation regularly dissolved by court proceedings in 1931 could not four years later, in 1935, file a *voluntary* petition for reorganization under § 77B of the Bankruptcy Act, 48 Stat. 912, 11 U.S. C.A. § 207. Justice Sutherland, delivering the opinion of the Court, emphasized that the dissolved corporation itself undertook to invoke the powers of the bankruptcy court. See 302 U.S. at pages 124 and 127, 58 S.Ct. at pages 126, 128. He posed the question: "It is suggested that the state cannot keep the corporation alive for its own purposes and deny it life for federal purposes." [302 U.S. 120, 58 S.Ct. 129.] That proposi-

cipal reliance is on United States v. Safeway Stores, 10 Cir., 140 F.2d 834. Involved there was a prosecution for violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2, against several corporations organized respectively under the laws of Texas, California, Delaware and Nevada. Each of the defendant corporations had been dissolved in accordance with the laws of the state of its creation *prior* to the return of the indictment. The Tenth Circuit affirmed the district court's judgment ordering the proceeding abated. The district court in the instant case stated that it simply could not agree with the construction of Article 1388 of the Revised Civil Statutes of Texas [6] by the Tenth Circuit in the Safeway case, supra.

In Eastman, Gardiner & Co. v. Warren, 5 Cir., 109 F.2d 193, this Court stated that, "Statutes prolonging the existence of a dissolved corporation are remedial and should be given a liberal construction." That is especially true in Texas where the State constitution [7] provides that its corporation laws "shall * * * provide fully for the adequate protection of the public," and where Article 10 of the Revised Civil Statutes establishes a rule that the provisions of the Revised Statutes "shall be liberally construed with a view to effect their objects and to promote justice."

As to corporations organized under the laws of Delaware, the holding of the Tenth Circuit in the Safeway Store case, supra, is followed in United States v. Line Material Co., 6 Cir., 202 F.2d 929, and in United States v. United States Vanadium Corporation, 10 Cir., 230 F.2d 646, but is disapproved in United States v. P. F. Collier & Son Corp., 7 Cir., 208 F.2d 936, 40 A.L.R.2d 1389; United Sttaes v. Maryland State Licensed Beverage Ass'n, D.C.Md., 138 F.Supp. 685; and United States v. Maryland & Virginia Milk Producers, Inc., D.C.D.C., 145 F.Supp. 374. The rationale of the Tenth Circuit in the Safeway case, supra, is criticized also in United States v. Cigarette Merchandisers Ass'n, D.C.S.D.N.Y., 136 F.Supp. 214. The courts refusing to follow the Tenth Circuit practically all point out that the word "proceedings"

---

tion, he stated, need not be challenged because, under state law, no proceedings of any kind could be instituted on behalf of a dissolved corporation except within two years of its dissolution, and thereafter it remained in existence only for the completion of proceedings theretofore instituted. Justice Cardozo, in a dissent in which he was joined by Justices Stone and Black, thought that, "Here the state has elected to keep the corporation in existence, maimed but still alive," and further that, "It is not within the competence of Illinois by any form of words to preserve the artificial entity for a purpose of her own and destroy it for the purpose of withdrawal from the supremacy of federal law." 302 U.S. at page 131, 58 S.Ct. at page 130.

Defense Supplies Corporation v. Lawrence Warehouse Co., 336 U.S. 631, 69 S.Ct. 762, 93 L.Ed. 931, involved the interpretation of the *Act of Congress* dissolving Defense Supplies Corporation, 59 Stat. 310, 15 U.S.C.A. § 611 note.

6. "Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the pres-

ident and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands." Article 1388 of Revised Civil Statutes of Texas.

7. Constitution of Texas, Art. 12, § 2, Vernon's Ann.St.

is broad enough to cover criminal prosecutions.

■ We agree with the learned District Judge that the "power to settle the affairs" of the corporation, "and for this purpose" to "defend judicial proceedings" in Article 1388, supra, continues the corporation in existence for the purpose of defending these criminal proceedings.

However, the Tenth Circuit's decision in Safeway, supra, seems to be based also on another provision of the Revised Civil Statutes of Texas, Article 1374,[8] when it states:

"The Texas statute empowers the directors to maintain or defend judicial proceedings. It does include actions for a fine, forfeiture or penalty that the state of Texas has, or may have, against the dissolved corporation. But fines, forfeitures, or penalties due other sovereignties are necessarily excluded." 140 F.2d at page 839.

Pursuing that argument, appellant's counsel asserts with much emphasis:

"Article 1374 expressly grants the State of Texas alone the right to prosecute criminally a dissolved Texas corporation. The refusal of the Texas Legislature to include any other sovereign in Article 1374 necessarily and positively excludes criminal prosecutions by other sovereigns. This construction is unanswerable and controlling on the sole question before this Honorable Court."

8. "Any action or cause of action for any fine, forfeiture or penalty that the State of Texas has, or may have, against any corporation chartered under the laws of this or any other state, territory or nation, shall not abate or become abated by reason of the dissolution of such corporation, whether voluntary or otherwise, or

■■ Accepting for the moment the construction accorded Article 1374 by the Tenth Circuit and by appellant, the proposition posed by the Supreme Court in Chicago Title & Trust Company v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L. Ed. 147, and answered so forcefully by the dissenting Justices, (see footnote 5, supra,) now recurs, indeed is squarely presented for decision. In the judicial climate of realism now prevailing, it may be doubted whether the dissolution of a defendant corporation *after* indictment can ever prevent the prosecution from proceeding for the punishment would be suffered by the same *real* persons, the stockholders and others financially interested in the corporation, whether the fine against the corporation were recovered before or after dissolution. In any event, we have no doubt that a state can no more continue the existence of one of its corporations and at the same time immunize it against federal criminal prosecution, than it could have created the corporation in the first instance with such immunity.[9] We think, however, that the more reasonable construction of Article 1374 is that the Texas Legislature did not *undertake* to provide either for the abatement or for the survival of a federal criminal proceeding because that simply was not within its province. See Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645, 648.

The judgment is therefore

Affirmed.

by the forfeiture of its charter or permit." Art. 1374, Revised Civil Statutes of Texas.

9. Compare the reasoning in Northern Securities Co. v. United States, 193 U.S. 197, 333, 24 S.Ct. 436, 48 L.Ed. 679, and Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645, 648.