### UNITED STATES of America

v.

### CENTRAL NATIONAL BANK and Alamo Bank of Texas, as Successor in Interest to Central National Bank.

#### Crim. No. B–87–537.

United States District Court, S.D. Texas, Brownsville Division.

May 31, 1988.

Thomas G. Sharpe, Jr., Brownsville, Tex., for defendants.

Charles Lewis, Asst. U.S. Atty., for U.S.

## MEMORANDUM AND ORDER

VELA, District Judge.

Before this Court is Defendants' Motion To Dismiss the Indictment and Supplemental Motion to Dismiss in the above numbered cause.

### Statement Of The Case

The United States of America has named two financial institutions in this indictment. Central National Bank (hereinafter "CNB"), and Alamo Bank of Texas (hereinafter "AB"), as successor in interest to Central National Bank, have been indicted for failing to file with the Internal Revenue Service the proper Currency Transaction Reports (CTR's or Form 4789) as required by Title 31 United States Code Sections 5313, and 5322(b), and for conspiracy to fail to file the above in violation of Title 18 United States Code Section 371.

CNB was authorized to commence the business of banking as a National Banking Association on February 14, 1983. The seven specific deposits that CNB is alleged to have failed to file and conspired to fail to file allegedly occurred between February 14, 1983 and April 2, 1984. CNB is accused of conspiring with Juan Frank Garcia, Emilio Quintero–Payan and Juan Jose Quintero–Payan (not here indicted).

AB is a financial institution authorized to operate under the Texas banking laws. On February 11, 1987 the Board of Directors of both banks approved a plan of merger providing for the merger of CNB with and into AB under the charter and title of Alamo Bank of Texas. On April 1, 1987, CNB became a branch bank of AB and CNB surrendered its Charter to the Office of the Comptroller of the Currency on April 3, 1987.

### Issues

In considering Defendants' Motions to Dismiss the indictment the Court considered four different issues.

1. Whether flow-through liability can be maintained in order to hold AB (as succes-

sor) liable for CNB's alleged criminal violations which supposedly occurred 3 years prior to the merger.

2. Whether CNB is considered "dead" relieving it from the alleged prior criminal conduct.

3. Whether the letter by Deputy Comptroller (Comptroller of the Currency) relieved CNB for the alleged criminal conduct.

4. Whether the indictment is faulty because the indictment does not confine the alleged transactions to a twelve month period.

### Analysis

■ 1) From the outset, the Court acknowledges that both Federal and State law allow a merger and provide for the continuation of business and corporate entity. (The wording of these statutes is similar but not identical). The Court is persuaded that the Texas Statute controls because, a) AB, the resulting bank, is a state bank and is authorized to operate under the Texas banking laws, and b) it was the Texas Department of Banking that issued the Certificate of Merger and a Branch Certificate of Authority to CNB.

The Texas State Statute entitled Merger–Trust Powers states in pertinent part:

Any two or more state banks, or if national banks are hereafter authorized by the laws of the United States to participate in such a merger, *any one or more state banks and any one or more national banks domiciled in this State may ... be merged.*
(2) If the Banking Commissioner approves the merger ... *the resulting bank shall be deemed a continuation in entity and identity of each of the banks involved in the merger; shall be subject to all liabilities, obligations, duties and relations of each merging bank; ...*
(Court's emphasis)

Tex.Rev.Civ.Stat.Ann. art. 342–308 (Vernon Supp.1988).

It appears that the Texas Legislature intended this banking merger statute to parallel the merging of Texas corporations at least in the procedure that a stockholder may dissent from the merger. "That procedure applies to a merger under this article as if the state bank were a corporation organized under the Texas Business Corporation Act." Tex.Rev.Civ.Stat.Ann. art. 342–308 (Vernon Supp.1988).

Under the Constitution, the federal government is not expressly granted the power to form corporations. *United States v. Polizzi,* 500 F.2d 856, 907 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). "Therefore, the existence and status of corporations ... should be determined by reference to the law of the state of their incorporation, unless the application of that law would conflict with the federal policy." *Polizzi,* at 907. The Court therefore looks to Texas state law on the effect of the merger.

The Texas Statute entitled Effect of Merger or Consolidation of Domestic Corporations provides in part:

When such merger or consolidation of domestic corporations has been effected: ... (5) Such surviving or new corporation shall thenceforth be responsible and liable for all liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporations shall be impaired by such merger or consolidation.

Tex.Bus.Corp. Act Ann. art. 5.06 (Vernon Supp.1988).

This statute seems to expand on the concept set out in the statute authorizing a merger of national and state banks. The statute not only makes the new or surviving corporation liable for all liabilities and obligations but expressly includes that any claim, action, or proceeding by or against any of the corporations may be prosecuted with the new corporation substituted in its place.

The Court has found no Fifth Circuit cases directly on point with regard to whether the aforementioned terms are broad enough to include criminal liability.[1] The Seventh and Tenth Circuits, in well reasoned opinions, contemplated whether the statutes in two different states allowed criminal prosecution under statutes similarly worded to those of Texas. "The words 'any action, suit, or proceeding' in their ordinary and generally accepted meaning and use embrace, so we think, all forms of litigation, civil, criminal, bankruptcy and admiralty." *United States v. P.F. Collier and Son Corp.*, 208 F.2d 936, 940 (7th Cir.1953). "The word 'actions', like the term 'proceedings' in the Delaware and Maryland statutes ... is sufficiently broad to embrace a criminal prosecution of a corporate defendant." *United States v. Mobile Materials, Inc.*, 776 F.2d 1476 (10th Cir. 1985).[2]

2) The Defendants claim that CNB should be dismissed from the case arguing that CNB is "dead" because the Government allowed the surrender of its charter. The Court disagrees with the concept that CNB is dead, because as stated earlier Tex. Rev.Civ.Stat.Ann. art. 342–308 (Vernon Supp.1988) provides "the resulting bank shall be deemed a continuation in entity and identity of each of the banks involved in the merger."[3] CNB did not cease to exist but continued in business entity and identity.

The Court further acknowledges that two Texas statutes would allow survival of the corporation for at least three years after dissolution. "A corporation dissolved ... shall continue its corporate existence for a period of three years from the date of dissolution, for the following reasons: (1) prosecuting or defending in its corporate name any action or proceeding by or against the corporation ..." Tex. Bus. Corp. Ann. art. 7.12 (Vernon Supp.1988).

The other Texas statute provides: "Any action or cause of action for any fine, forfeiture or penalty that the state of Texas has, or may have, against any corporation chartered under the laws of this or any other state, territory or nation, shall not abate or become abated by reason of the dissolution of such corporation, whether voluntary or otherwise, or by the forfeiture of its charter or permit." Tex.Rev.Civ. Stat.Ann. art. 1302–5.09 (Vernon 1980).

The Fifth Circuit Court of Appeals has held "that a state can no more continue the existence of one of its corporations and at the same time immunize it against federal criminal prosecution, than it could have created the corporation in the first instance with such immunity." *Alamo Fence Company of Houston v. United States*, 240 F.2d 179, 183 (5th Cir.1957). "If dissolution by reason of the statute works no extinguishment of a legal right, we discern no reason why it works on extinguishment of a legal liability, whether civil or criminal.... [There] is no sound reason why a legislature would intend to relieve a dissolved corporation of its criminal liability and at the same time preserve its civil liability." *P.F. Collier* at 940.

**1.** The Fifth Circuit Court of Appeals agreed with other circuits which stated that the word "proceedings" is broad enough to cover criminal prosecutions. *Alamo Fence Company of Houston v. United States*, 240 F.2d 179, 182–83 (5th Cir.1957). However, the statute before the Court in *Alamo*, Vernon's Ann.Civ.St. art. 1374, granted the State of Texas alone the right to prosecute criminally a dissolved Texas corporation. Art. 1374 has been repealed but it was the source of the present Tex.Rev.Civ.Stat.Ann. art. 1302–5.09 (Vernon 1980).

**2.** The *Mobile Materials* court relied heavily on *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959). In *Melrose* the Supreme Court of the United States

held that two separate corporations that were dissolved under their respective state statutes were not allowed to abate criminal proceedings. The Court in their decision said that they were satisfied that the term "proceeding" implied enough vitality to make the corporation an "existing" enterprise for the purposes of the Sherman Act. *Melrose Distillers, Inc. v. United States*, 359 U.S. 271, 273, 79 S.Ct. 763, 765, 3 L.Ed.2d 800 (1959).

**3.** The Federal Statutes that compare to this Texas Statute are 12 U.S.C. § 214a which allows the merger, and 12 U.S.C. § 214b which provides in part "the resulting state bank shall be considered the same business and corporate entity as the national banking association ...".

3) Defendants' argument that the Comptroller of the Currency forgave CNB for its past wrongdoing is a question to be determined by the facts. The question whether the Comptroller of the Currency in fact has authority to litigate or settle criminal matters will be carried along and determined if indeed CNB was forgiven for the violations alleged in the indictment.

4) Defendants' last issue questions whether the pattern of illegal conduct that the Government has alleged is longer than the 12 month period required in the Federal CTR Statute. In the recent case *United States v. Bank of New England,* 821 F.2d 844, 852 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987), the Court said, "The Government must prove that the transaction involved more than $100,000 in a 12–month period. No one transaction has to be greater than $100,000, so long as the total of the transaction is in *any* 12–month period. It's a shifting period, so you can look at any period that you want." This issue is also to be determined from the facts in the case.

### Rulings And Effect

Defendants' Motion to Dismiss and Supplemental Motion to Dismiss are hereby DENIED. [The denial of these Motions does not expose Defendants to double penalty or liability.]